MARIA LOPEZ, a/k/a MARY AND MARIANTONIA LOPEZ, AND FRANK LOPEZ, HER HUSBAND, PLAINTIFFS-RESPONDENTS, v. ALFRED J. SWYER, M. D., DEFENDANT-APPELLANT, AND MILTON DANON, D. O., ROBERT OSDER, D. O., AND HAROLD STRICKER, D. O., DEFENDANTS-RESPONDENTS.

Argued October 10, 1972—Decided February 20, 1973.

*Mr. John J. Francis, Jr.,* argued the cause for defendant-appellant (*Messrs. Shanley and Fisher,* attorneys; *Mr. Francis,* of counsel; *Mr. Joseph L. Cook,* on the brief).

*Mr. David A. Pressler* argued the cause for plaintiffs-respondents (*Messrs. Okin, Pressler and Shapiro,* attorneys; *Mr. Pressler,* of counsel; *Mrs. Sylvia B. Pressler,* on the brief).

*Mr. John Robert Heher* argued the cause for New Jersey Hospital Association as *Amicus Curiae* (*Messrs. Smith, Stratton, Wise and Heher,* attorneys; *Mr. Heher,* of counsel and on the brief).

The opinion of the Court was delivered by

MOUNTAIN, J. Plaintiff, Maria Lopez, brought suit seeking damages for personal injuries allegedly attributable to the negligence and other tortious misconduct of four defendants, all of whom are physicians. The complaint charged medical malpractice, fraud and conspiracy. Her husband, Frank Lopez, joined as plaintiff, seeking damages *per quod*.

All defendants moved for summary judgment. As to defendant, Swyer, the motion was granted; the motions of the other three defendants were denied. Plaintiffs and the unsuccessful defendants sought leave to appeal. The Appellate Division reserved decision on these motions, at the same time remanding the case to permit the taking of the depositions of all defendants — plaintiffs' depositions were already before the court — to be followed by reargument before the trial judge. At the reargument the trial court granted summary judgment in favor of all defendants. Upon plaintiffs' appeal, the Appellate Division reversed and remanded the suit for trial as to all parties. 115 *N. J. Super.* 237 (1971). Of the several defendants, Swyer alone sought certification, which we granted. 59 *N. J.* 361 (1971). Accordingly we deal only with the plaintiffs' claims against him; we do not pass upon any of the issues pertaining to the other three defendants.

The facts are set forth fully in the opinion of the Appellate Division, 115 *N. J. Super.* at 241–245, and will be only briefly restated here.[1] Following a radical mastectomy for breast cancer, performed by a surgeon who is not involved in this case, Mrs. Lopez's personal physician, the defendant Dr. Milton Danon, referred his patient to the defendant Dr. Alfred J. Swyer, a radiologist, for radiation therapy. The latter administered x-ray treatments daily except Sundays

---

[1] The facts are also accurately detailed in Comment, Statute of Limitations — Malpractice — Discovery Rule Applied to External Injuries, 25 *Rutgers L. Rev.* 711, 712–713 (1971).

from January 8 to February 13, 1962. Mrs. Lopez's reaction to this course of therapy is described in detail in the opinion below, where it is fairly characterized as having been "dramatically calamitous." She suffered severe burns and was constantly plagued with pain and nausea. Necrotic ulcers appeared, requiring surgery. The burns produced suppuration from the surgical incision. She developed radiation fibrosis of the lung and suffered spontaneous rib fractures. Upon 15 separate occasions hospitalization was required. Following the radiation administered by Dr. Swyer, she was treated frequently and regularly until early 1966 by Dr. Danon and by his office associates, Dr. Osder and Dr. Stricker, who are also defendants. In 1966 the relationship ended and plaintiff sought medical assistance elsewhere. In March, 1967, while in a hospital for reconstructive surgery, Mrs. Lopez overheard a doctor who had been examining her say to some other doctors who were present, "And there you see, gentlemen, what happens when the radiologist puts a patient on the table and goes out and has a cup of coffee." This was, she says, her first intimation that Dr. Swyer had been negligent.

This suit was commenced September 18, 1967. Dr. Swyer is charged with having been negligent in administering radiation. Doctors Danon, Osder and Stricker are charged with negligence in that they gave bad advice, with having falsely reassured the plaintiffs and with having concealed knowledge, which it is alleged they possessed, of Dr. Swyer's alleged malpractice. It is also asserted that all four physicians conspired together to effect this concealment.

We agree with the Appellate Division that the most difficult of the questions presented has to do with the application of the statute of limitations as it relates to plaintiffs' claim for negligence against Dr. Swyer. As will be seen from what is said above, his last contact with Mrs. Lopez was in 1962 and suit was not commenced until 1967. The statute applicable to personal injury claims requires that they be brought within two years of the accrual of the cause of action.

*N. J. S. A.* 2A:14-2. Faced with this time problem, plaintiffs seek to avail themselves of the so-called "discovery" rule. This doctrine, of which more will be said below, provides that in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.

The Appellate Division concluded that the trial court had erred in granting Dr. Swyer's motion for summary judgment and as to this we agree, substantially for the reasons given. That court's decision also directed a remand for a full trial at which there would be submitted to the jury the question of the alleged negligence of all the defendants, the fraud charged against Danon, Osder and Stricker, the alleged conspiracy, "together with the question as to when plaintiffs knew or should reasonably have known the nature of Maria's illness and its causal relationship with the alleged negligence." 115 *N. J. Super.* at 252. Referring now only to plaintiffs' negligence claim against Swyer, the obvious purpose of submitting to the jury the issue embraced in the words last quoted is to elicit a factual determination upon which to rest a decision as to whether or not the statute of limitations may be interposed as a bar to the action. While we entirely agree with the views expressed by the court below leading to the conclusion that there should be a remand for the purposes set forth above, we have concluded that the direction to the trial court upon such remand should be modified in one important respect. This Court seems never to have deliberately considered the precise point, but we now hold that whenever a plaintiff claims a right to relief from the bar of the statute of limitations by virtue of the so-called "discovery" rule, the question as to whether such relief is properly available shall be deemed an issue for determination by the court rather than by the jury.

The discovery rule was first announced by this Court in *Fernandi v. Strully,* 35 *N. J.* 434 (1961). There, in the course of an operation, a wing nut had been negligently left in the plaintiff's abdomen. Its presence was not discovered until more than two years thereafter. We held that the two-year statute of limitations did not begin to run until plaintiff knew or had reason to know of the existence of the foreign object.

While *Fernandi* expressly confined the discovery rule to foreign body malpractice actions, 35 *N. J.* at 450, 451, subsequent decisions have gone much further and have acknowledged the relevance of the doctrine whenever equity and justice have seemed to call for its application. Thus in *New Market Poultry Farms, Inc. v. Fellows,* 51 *N. J.* 419 (1968) this Court found that plaintiff's cause of action against defendant, a professional engineer and land surveyor, arising from the latter's negligent miscalculation of acreage, did not accrue when the error was made, but rather eleven years later when it was discovered. In *Diamond v. N. J. Bell Telephone Co.,* 51 *N. J.* 594 (1968) plaintiffs did not discover that defendant's installation of a conduit had apparently damaged their sewer line until nine years after the event. It was held that the statute did not start to run until plaintiffs became aware of the wrong. In *Yerzy v. Levine,* 57 *N. J.* 234 (1970), we affirmed a decision of the Appellate Division, 108 *N. J. Super.* 222 (1970), holding that a patient might sue for injuries resulting from an improper operative procedure, more than two years after the event, if she could establish that she had not previously known, nor could she reasonably have known, that she might have a basis for an actionable claim. See also, *Farrell v. Votator Division of Chemetron Corporation,* 62 *N. J.* 111 pp. 115, 116 (1973).

The discovery rule is essentially a rule of equity. It has been said that in equity lies its genesis. *Owens v. White,* 342 *F.* 2d 817, 820 (9th Cir. 1965). Like so many other equitable doctrines it has appeared and is developing as a means of mitigating the often harsh and unjust results which

flow from a rigid and automatic adherence to a strict rule of law. On the face of it, it seems inequitable that an injured person, unaware that he has a cause of action, should be denied his day in court solely because of his ignorance, if he is otherwise blameless. Yet such is the result that must follow if the years of the statute are to be inexorably calculated from the moment of the wrong, whether or not the party aggrieved knows or has reason to know that he has a right of redress. Parenthetically, we note that the ignorance of which we speak may be of more than one kind. A person may, for instance, be unaware that he has sustained injury until after the statute of limitations has run. This was true in both *New Market Poultry Farms, Inc.* and *Diamond, supra,* where, in each case, the fact of the wrong lay hidden until after the prescribed time had passed. In other cases damage may be all too apparent, but the injured party may not know that it is attributable to the fault or neglect of another. The plaintiffs' claim in this suit falls within the latter category.

■ ■ It may also be unjust, however, to compel a person to defend a law suit long after the alleged injury has occurred, when memories have faded, witnesses have died and evidence has been lost. After all, statutes of limitations are statutes of repose and the principal consideration underlying their enactment is one of fairness to the defendant. *Developments in the Law-Statutes of Limitations,* 63 *Harv. L. Rev.* 1177, 1185 (1950). So in each case the equitable claims of opposing parties must be identified, evaluated and weighed. Where, as is often the case, they cannot be wholly reconciled, a just accommodation must be reached. We think this can better be done by a judge than by a jury. In the first place the question as to the application of the statute of limitations is ordinarily a legal matter and as such is traditionally within the province of the court. Furthermore, submission of the issue to a jury is in every sense awkward. It is true that the time of discovery is a question of fact, and so could be left to a jury. But, as we have indicated, the

matter does not rest there. It is not every belated discovery that will justify an application of the rule lifting the bar of the limitations statute. The interplay of the conflicting interests of the competing parties must be considered. The decision requires more than a simple factual determination; it should be made by a judge and by a judge conscious of the equitable nature of the issue before him.[2]

The determination by the judge should ordinarily be made at a preliminary hearing and out of the presence of the jury.[3] Generally the issue will not be resolved on affidavits or depositions since demeanor may be an important factor where credibility is significant. Where credibility is not involved, affidavits, with or without depositions, may suffice; it is for the trial judge to decide. The issue will be whether or not a party, either plaintiff or counterclaimant, is equitably entitled to the benefit of the discovery rule. All

---

[2] We have in New Jersey a long history of instances where equity has interposed to bar the statute of limitations in actions at law where some conduct on the part of the defendant in the law action has rendered it inequitable that he be allowed to avail himself of this defense. See for instance, *Lamb v. Martin*, 43 *N. J. Eq.* 34 (Ch. 1887) ; *Holloway v. Appelget*, 55 *N. J. Eq.* 583, 585 (E. & A. 1897) ; *Clark v. Augustine*, 62 *N. J. Eq.* 689, 694 (Ch. 1902) ; *Freeman v. Conover*, 95 *N. J. L.* 89 (E. & A. 1920) ; *Howard v. West Jersey, etc., R. R. Co.*, 102 *N. J. Eq.* 517, 521 (Ch. 1928) ; *Noel v. Teffeau*, 116 *N. J. Eq.* 446 (Ch. 1934). In case of fraud the period of limitation, in equity, begins to run only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered. *Partrick v. Groves*, 115 *N. J. Eq.* 208, 211 (E. & A. 1933) ; *Lincoln v. Judd*, 49 *N. J. Eq.* 387 (Ch. 1892).

[3] In an appropriate case, however, where it can be foreseen that much the same evidence will be adduced at the trial itself as upon the statute of limitations issue, the judge may elect to go forward with the trial, receiving the evidence and ruling upon the limitations issue at the end of the plaintiff's case or after all proofs are in, as may be appropriate. Where this procedure is followed, the trial court must be careful to excuse the jury when any evidence is to be received relevant solely to the limitations point, if the reception of such evidence in the jury's presence might be in any way prejudicial to the opposite party.

relevant facts and circumstances should be considered. The determinative factors may include but need not be limited to: the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant. The burden of proof will rest upon the party claiming the indulgence of the rule.[4]

In addition to charging Dr. Swyer with negligence, plaintiffs also assert that he conspired with Doctors Danon, Osder, and Stricker to conceal his alleged wrongdoing. The conspiracy charge has obviously greater significance against the other defendants than against Swyer. Proof of conspiracy will in no way enlarge plaintiff's claim — once proven — against him, at least as to compensatory damages. It is probably pertinent to recall that "[t]he gravamen of an action in civil conspiracy is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." *Board of Education, Asbury Park v. Hoek*, 38 *N. J.* 213, 218 (1962).

---

[4]In England a very similar method of dealing with this problem has been devised by Parliament. The Limitation Act 1963, 11 and 12 *Eliz.* 2, c. 47 provides that a plaintiff may apply to a single judge to be relieved from the bar of the statute of limitations and that such relief will be granted upon a showing that "material facts of a decisive character" were not known to the plaintiff until after the running of the statute. These facts may relate either to the existence of an injury or to the fact that the injury is attributable to the wrongdoing of a particular person against whom the plaintiff may have a cause of action. The plaintiff must also establish that he did not know the fact nor could he, under all of the circumstances, reasonably have known it. A substantially identical statute has been adopted in the province of Manitoba, *R. S. M.*, 1970, c. 145. See Note, Statutory Provision for the Enlargement of Limitation Periods —Manitoba, 47 *Can B. Rev.* 106 (1969) ; *cf. McLaren, The Impact of Limitation Periods on Actionability in Negligence*, 7 *Alberta L. Rev.* 247, 254–255, 268–270 (1969).

The judgment of the Appellate Division as to defendant Swyer is affirmed and the cause is remanded to the Law Division for further proceedings consistent with the determination of the Appellate Division as modified by this opinion.

*For affirmance and remandment*—Chief Justice WEIN-TRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN, and Judges CONFORD and SULLIVAN—7.

*For reversal*—None.