580 A.2d 734

WALTER WANNER AND MILLICENT WANNER, HIS WIFE, PLAINTIFFS–APPELLANTS, v. PHILIP CAREY MANUFACTURING COMPANY, PHILIP CAREY CORPORATION, CELOTEX CORPORATION, KEENE CORPORATION, OWENS–ILLINOIS, INC., PITTSBURGH–CORNING CORPORATION AND GAF CORPORATION, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1989—Decided November 22, 1989.

Before Judges ANTELL and ASHBEY.

*Ronald B. Grayzel* argued the cause for appellants (*Levinson, Axelrod, Wheaton & Grayzel,* attorneys, *Ronald B. Grayzel,* on the brief).

*Michael A. Tanenbaum* argued the cause for respondents (*McCarter & English,* attorneys, *Michael A. Tanenbaum,* of counsel, *John C. Garde* and *David S. Osterman,* on the brief).

ANTELL, P.J.A.D.

Plaintiff Walter Wanner sues defendants asbestos manufacturers to recover damages for pleural asbestosis contracted from exposure to defendants' products. His wife sues *per quod.* They now appeal by our leave granted from an order for summary judgment dated February 9, 1989, dismissing the complaint as to all but two defendants on the ground that it was filed beyond the period prescribed by the statute of limitations, *N.J.S.A.* 2A:14–2, for the bringing of personal injury actions.

Between the years 1950 and 1985 plaintiff worked as a building insulation installer. Commencing around March 1963 and continuing until 1983 he underwent periodic physical examinations to monitor the effects of his exposure to asbestos products. The examinations were performed as part of a study conducted by Dr. Irving J. Selikoff, a professor of medicine at the Mount Sinai School of Medicine in New York. Plaintiff appears to have undergone a total of eight examinations during this period.

It was Dr. Selikoff's practice to correspond with plaintiff after the examinations to communicate his findings. On December 28, 1984, the doctor wrote to plaintiff concerning the results of his examination conducted 14 months earlier, in

October 1983. Because defendants contend that the period of limitations was thereby triggered, we reproduce its contents in its entirety:

> Dear Mr. Wanner:
>
> We have again reviewed the results of your examination in Paterson last year and are writing so that you might note for your records that these were very satisfactory.
>
> Thus, while your chest x-ray showed some scarring of the sort we commonly find following asbestos insulation work, this was limited in extent and not accompanied by any of the serious complications we occasionally encounter, that would give us immediate concern.
>
> Results of the pulmonary function tests show some decrement, including that seen in the FVC (forced vital capacity), a test which tends to reflect lung scarring. A copy is attached for your convenience; you may wish to share this with Dr. Rizvi.
>
> Findings in the standard blood and urine tests showed nothing unusual; these, too, are being sent to you.
>
> We were pleased to note that no previously undetected significant abnormality was discovered in Dr. Gupta's examination.
>
> With what we now know, you were surely wise never to have smoked cigarettes!
>
> Should you consider we may be of further assistance, please don't hesitate to write to us.

When he received the foregoing letter, plaintiff was in apparent good health. He showed no symptoms of a lung disorder, and he says he was told at the time of the examination that his health was good. In July 1987, however, he began to experience shortness of breath in hot weather. He was then examined by Dr. Albert Miller who determined in a report dated August 26, 1987, that plaintiff had developed pleural fibrosis and calcification. This suit was then instituted on October 16, 1987.

*N.J.S.A.* 2A:14–2 requires that suits for personal injury be commenced within two years from accrual of the cause of action. To relieve the sometimes harsh results of mechanically applying a statute of limitations, our courts have developed the "discovery rule," which postpones the accrual of a cause of action until a litigant

> learns, or reasonably should learn, the existence of that *state of facts* which may equate in law with a cause of action.

*Burd v. New Jersey Tel. Co.*, 76 *N.J.* 284, 291, 386 *A*.2d 1310 (1978). (emphasis in original). "The discovery rule is essentially a rule of equity." *Lopez v. Swyer*, 62 *N.J.* 267, 273, 300 *A*.2d 563 (1973). The question of when plaintiff's cause of action accrued focuses on ascertaining the point in time when he "discovered or should have discovered, by exercise of reasonable diligence and intelligence" that he has suffered an injury causally related to his exposure to asbestos products. *Vispisiano v. Ashland Chemical Co.*, 107 *N.J.* 416, 427, 527 *A*.2d 66 (1987). Applying this standard, the trial court concluded that the cause of action accrued when plaintiff received Dr. Selikoff's letter of December 28, 1984, and that the complaint filed October 16, 1987, was therefore barred by the statute of limitations. We disagree and reverse.

In arguing that plaintiff was put on notice of his occupational illness by the Selikoff letter, defendants stress that it refers to "some scarring" and the fact that the pulmonary function tests show "some decrement." But taken in context these comments are innocuous and are dissipated by the letter's overall reassuring tone. We would not expect plaintiff to discern therefrom any intimation that he was suffering from a disease caused by exposure to asbestos.

We first note that the letter addresses an examination conducted 14 months earlier. Plaintiff would naturally assume that if the doctor waited so long to notify him that the findings must be benign. That assumption is immediately buttressed by the opening paragraph which says that the results of the examination conducted "last year" were "very satisfactory." While it is true that the second paragraph speaks of "some scarring," it notes that it is of the sort "commonly" found among asbestos insulation workers, adding that it is "limited in extent and not accompanied by any of the serious complications we occasionally encounter, that would give us immediate concern."

Although the third paragraph refers to "some decrement" in pulmonary function, it does not suggest that this amounts to a present or threatened disability. The remaining short paragraphs state only that previous test results showed "nothing unusual" and that Dr. Selikoff was "pleased to note" that no new "significant abnormality" was detected.

Thus, the import of the letter is that although some scarring is present, abnormality is absent and there is no cause for concern. Absent even from its content is the suggested possibility that the condition might have progressed further during the 14 months prior to the letter and a recommendation for at least a precautionary follow-up examination.

As the court said in *Karjala v. Johns–Manville Products Corp.*, 523 *F*.2d 155, 160–61 (8th Cir.1975), "there is rarely a magic moment when one exposed to asbestos can be said to have contracted asbestosis; the exposure is more in the nature of a continuing tort." The effects of exposure to asbestos are not always accompanied by a redressible form of disability. They become more insidious with continued exposure, and with the passage of time they ripen into a disease. In *Herber v. Johns–Manville Corp.*, 785 *F*.2d 79 (3d Cir.1986), although a jury found that plaintiff had suffered a physical injury in the form of pleural thickening caused by asbestos, it nevertheless awarded no compensation. Recognizing that "the jury could have concluded that, despite his pleural thickening, Herber [plaintiff] was presently healthy and likely to remain so in the foreseeable future," the Circuit Court of Appeals declined to provide plaintiff with any relief from the "zero damage assessment." *Id.* at 89.

Charging plaintiff with notice that he was suffering from an actionable asbestos-related injury on the basis of Dr. Selikoff's letter presupposes that plaintiff was able to answer the difficult query posed by the Supreme Court in *Ayers v. Jackson Township*, 106 *N.J.* 557, 579, 525 *A*.2d 287 (1987), when it asked: "[A]t what stage in the evolution of a toxic injury should tort

law intercede by requiring the responsible party to pay damages?" We conclude that plaintiff, a working man presumably without medical training, was not reasonably expected to know from the information before him that his asbestos-related condition had matured into an injury for which he could seek redress.

Each case presented for determination under the discovery rule " 'calls for an identification, evaluation, and weighing of the equitable claims of the parties.' " *Abboud v. Viscomi*, 111 *N.J.* 56, 63, 543 *A.*2d 29 (1988) (quoting *Vispisiano v. Ashland Chem. Co.*, 107 *N.J.* at 428, 527 *A.*2d 66). Some of the determinative factors in making this analysis were stated in the following language by the Supreme Court in *Lopez v. Swyer*, 62 *N.J.* at 276, 300 *A.*2d 563:

> the nature of the alleged injury, the availability of witnesses and written evidence, the length of time that has elapsed since the alleged wrongdoing, whether the delay has been to any extent deliberate or intentional, whether the delay may be said to have peculiarly or unusually prejudiced the defendant.

These clearly militate in favor of reversing the summary judgment under review. As we have pointed out, the nature of the alleged illness is such that its existence, under the circumstances, lay beyond plaintiff's comprehension. Nowhere does the record suggest that witnesses or evidence necessary to defend this suit are no longer available because of the delay. The length of time since plaintiff's last exposure to asbestos is not unlike that encountered in many other asbestos or toxic tort cases. We see no intimation that defendants will be unusually or peculiarly prejudiced in refuting plaintiff's claims. Nor is there anything to suggest that the delay in bringing the suit was intentional. Under these circumstances, we conclude that plaintiff's cause of action did not accrue until July 30, 1987, the date of his examination by Dr. Miller, and that this action was therefore brought within the period of limitations.

Reversed.