719 A.2d 702

MARILYN PARETE, PLAINTIFF–APPELLANT, v. JOHN R. MULLY, D.M.D., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1998—Decided November 10, 1998.

Before Judges STERN, BRAITHWAITE [1] and WECKER.

*Tina Velantzas–Austin*, argued the cause for appellant (*Ms. Velantzas–Austin*, on the briefs).

---

[1] Judge Braithwaite did not participate in the oral argument but with the consent of the parties has participated in the disposition of the appeal.

*David Lustbader,* argued the cause for respondent (*Philip M. Lustbader* and *David Lustbader,* attorneys; D*avid Lustbader,* on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

Plaintiff appeals from a judgment entered on July 16, 1997 dismissing her complaint with prejudice on statute of limitations grounds because the action "was filed more than two years after the plaintiff knew of a potential cause of action." The complaint was filed on April 29, 1992.

Plaintiff contends that defendant waived the statute of limitations defense by failing to assert it before the day of trial, that the judge was wrong on the merits, and that even if the judge was correct with respect to barring her claim for orthodontic malpractice, there was never any statute of limitations defense asserted with respect to the root canal and bridge work performed by defendant.

I.

 We initially reject plaintiff's claim that the statute of limitations defense was waived because it was not raised until immediately before trial. The defense was expressly noted as a separate defense in the answer, answers to interrogatories, and in correspondence between defense counsel and plaintiff's former attorney.[2] In any event, as we will further develop, the merits of the statute of limitations defense in a case such as this, involving the discovery rule, depend upon the unique facts of the case regarding when the cause of action "accrued." The factual issue

[2] Defense counsel advised plaintiff's attorney in a letter about settlement, over three years before the *Lopez* hearing, that there was a statute of limitations issue because plaintiff "stated in her deposition that she knew the defendant did something wrong in June 1989." In response plaintiff's attorney expressed the belief "that plaintiff will prevail on any motion you raise claiming a statute of limitations problem."

can generally be resolved only after discovery is completed. For that reason, the statute of limitations, at least if asserted as an affirmative defense, may be addressed in a "discovery rule" case just before trial "at a preliminary hearing and out of the presence of the jury." *See Lopez v. Swyer*, 62 *N.J.* 267, 275, 300 *A.*2d 563 (1973). *Cf. Williams v. Bell Tel. Lab. Inc.*, 132 *N.J.* 109, 118–20, 623 *A.*2d 234 (1993); *Fees v. Trow*, 105 *N.J.* 330, 335, 521 *A.*2d 824 (1987); *O'Connor v. Altus*, 67 *N.J.* 106, 115–16, 335 *A.*2d 545 (1975) (not involving the "discovery rule"). The preferable practice, however, would be for a defendant to file a timely notice pursuant to *R.* 4:46, thereby allowing the plaintiff and the court to consider whether and when a *Lopez* hearing would be appropriate.

## II.

After a *Lopez* hearing, the trial judge concluded "that the statute of limitations bars this action because the complaint was filed more than two years after the plaintiff knew of a potential cause of action."

Only plaintiff testified at the hearing. According to plaintiff, she first went to defendant on January 25, 1988 "experiencing pain in the upper left side of her mouth." Defendant "removed her bridge and inserted a new bridge." The next month defendant "performed root canal work on a tooth (# 15) associated with the bridge," but could not find the "distal buccal canal," and about five months later, "permanently recemented [her] bridge." Plaintiff was not referred to a specialist.

In December 1988, as a result of plaintiff's concern "that her front tooth was starting to overlap the tooth next to it," defendant commenced orthodontic treatment on plaintiff. "Plaintiff complained to Dr. Mully throughout her treatment of problems including pain in her jaw and the opening of her bite, and protruding cuspids, etc." She asserts, however, that while "she began to believe that Dr. Mully may have done something wrong or made a mistake in view of what was happening," "[i]t wasn't until July–August 1990 when plaintiff finally learned that Dr. Mully indeed had maltreated her."

In June 1989, plaintiff consulted Dr. Langer because she "thought [Dr. Mully] might have made a mistake and [she] wanted to see if another orthodontist thought he was making a mistake." She wanted a second opinion because defendant insisted her teeth would eventually "settle back into place" and she "had doubts" as to what defendant was saying. She even thought he "was doing something wrong" in the treatment. According to plaintiff, Dr. Langer asked whether her visit related to litigation, and despite her negative response, he said "he did not want to get involved." According to plaintiff, Dr. Langer advised plaintiff "to go back to Dr. Mully and to let him complete his job."

Plaintiff subsequently visited a Dr. Halpern who gave her similar advice. Dr. Halpern, however, told plaintiff "he didn't handle TMJ problems" and suggested she might want to see a TMJ-orthodontic specialist. Plaintiff thereafter consulted a Dr. Rosenbloom, whom she saw because she "still felt that Dr. Mully did something wrong." In her depositions, plaintiff admitted she believed defendant was "getting in deeper and deeper and he really didn't know himself what was happening."[3] In order to avoid producing her dental records, which would have required telling Dr. Rosenbloom she was seeking another opinion, plaintiff told Dr. Rosenbloom that her dentist had died. Dr. Rosenbloom advised plaintiff that he could not "help [her] out" without seeing "all the molds, x-rays [and dental] records." It is not clear from the record when plaintiff visited Dr. Halpern or Dr. Rosenbloom.

In July 1990, plaintiff visited Dr. Fisher for another "opinion,"[4] because she still felt defendant "had done something wrong."

---

[3] Unfortunately the timing of plaintiff's visits to Doctors Halpern and Rosenbloom was not developed at the *Lopez* hearing nor in the briefs. It was understandably insignificant in the trial judge's opinion, because he concluded that the cause of action had accrued by the time she visited Dr. Langer in June 1989. According to plaintiff's deposition, she saw Dr. Halpern and Dr. Rosenbloom in the year *1990*, but no specific dates were given.

[4] The date is taken from plaintiff's deposition.

Plaintiff admittedly lied to Dr. Fisher about the name of her dentist and additionally stated that he had been deceased for five years, so that she would not have to provide Dr. Fisher with her dental records. Plaintiff contends that it was not until meeting with Dr. Fisher that she "finally learned that Dr. Mully indeed had maltreated her." She further asserts that it was not until March of 1992, when she consulted an expert for purposes of litigation, that she learned that defendant committed "malpractice not only in the orthodontal work," but also with respect to the earlier bridge and root canal work.

At the end of the *Lopez* hearing, the trial judge concluded:

Prior to her going to Dr. Langer in June of 1989 she knew something was wrong. She had a feeling that he had made a mistake. . . .

She states that she went on to seek further opinion with regard to a second opinion to help her as to the condition of her mouth. I don't believe that for one second. I believe she was looking for some support in a claim against the defendant in this case and I'll tell you why: . . . She wasn't seeking reassurance that Dr. Mully was doing the right thing. She was seeking reassurance and support for her claim that he was doing the wrong thing. There is no doubt in my mind that she knew or should have known at the time in June of 1989.

She is tailoring her story after she has been advised of what the situation is with regard to the statute of limitations. . . . Her testimony in her deposition is more forthright . . . .

Under the circumstances because no one would reassure her when she says she was going for reassurance which I don't believe for one moment based upon when I saw her face-to-face on the witness stand and things like that, that wasn't what she was looking for at all. She was looking for someone who would support her in her claim against Dr. Mully at that point because of the fact that it took four tries. Reassurance doesn't take four tries. If the first one reassur[es] you to go back and do it again, that's what reassurance would be. She didn't accept that. She went to the second, she went to the third, she went to the fourth, and finally wound up lying . . . .

Under those circumstances there's no doubt in my mind that the cause of action had accrued by June of 1989 when she knew, she actually knew, she felt in her mind that he had done it wrong, that he had made some mistakes. She said that, she said he made mistakes, she said she was aware in 1989 that he made mistakes, she certainly was aware that it was him, and she certainly was aware that she was having problems. Under those circumstances the statute ran in June of 1991. Now, the case wasn't filed until about ten months after that and the claim is barred by the statute of limitations. Complaint dismissed.

### III.

Our Supreme Court recently revisited the discovery rule in the context of a medical malpractice case in *Baird v. American Medical Optics*, 155 *N.J.* 54, 713 *A.*2d 1019 (1998). Much in *Baird* would appear to support the trial court's conclusion here.

As *Baird* pointed out, "[t]he discovery rule delays the accrual of a cause of action [only] until 'the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" *Baird, supra,* 155 *N.J.* at 66, 713 *A.*2d 1019, (quoting *Lopez, supra,* 62 *N.J.* at 272, 300 *A.*2d 563). "The discovery rule prevents the statute of limitations from running when injured parties reasonably are unaware that they have been injured, or, although aware of an injury, do not know that the injury is attributable to the fault of another." *Baird, supra,* 155 *N.J.* at 66, 713 *A.*2d 1019, (citing *Tevis v. Tevis,* 79 *N.J.* 422, 432, 400 *A.*2d 1189 (1979)).

In *Baird* defendant ophthalmologist operated on plaintiff in 1983, and plaintiff left defendant's care on August 9, 1984. *Id.* at 58, 62, 713 *A.*2d 1019. In view of plaintiff's complaints and condition after the surgery "Baird knew at least by 1985 of facts that would have alerted a reasonable person that her eye injuries were possibly, if not probably, caused by the fault of another," and attributable to the surgery. *Id.* at 68, 713 *A.*2d 1019. The fact that Baird's cause of action was based on a claim of informed consent, premised on learning in 1991 that the intraocular lens implanted in 1983 was an experimental device, did not permit a delay in the accrual of her cause of action because of her earlier awareness "that she had sustained damages as the result of the fault of an identifiable person." *Id.* at 69, 713 *A.*2d 1019.

In the case before us, however, the record does not reflect precisely when plaintiff sought the opinions of Dr. Halpern and Dr. Rosenbloom, and she saw Dr. Fisher within two years of filing her complaint. Dr. Fisher rendered a report with "recommendations" for future orthodontic treatment dated July 30, 1990. Although the trial judge referred to plaintiff's knowledge by the time

she consulted Dr. Langer, there is no contest, for present pur-
poses, that he told her "to go back to Dr. Mully and to let him
complete his job." According to plaintiff, Dr. Halpern told her the
same.

More significantly, it is not contested before us that defendant
treated plaintiff until November 21, 1990. Defendant's treatment
chart for plaintiff reflects that defendant treated plaintiff at least
once every month in 1989 and eight times in 1990. This is not a
case where plaintiff returned to defendant's office once or twice
for purposes of elongating the statute of limitations. Rather, it is
a case involving ongoing regular treatment less than two years
before the complaint was filed. According to plaintiff, during the
root canal treatment, defendant told her that the pain "could go
away and God would take care of that." He also told her while
doing the orthodontic work that "[t]he teeth would settle in."

In this case, as in *Abboud v. Viscomi*, 111 *N.J.* 56, 543 *A.2d* 29
(1988), "[t]he trial court treated as dispositive plaintiff's admis-
sions that she felt something had gone wrong and promptly had
questioned defendant's handling [of her case], concluding that such
knowledge constituted discovery of her cause of action against
defendant." *Id.* at 61, 543 *A.2d* 29. In *Abboud,* the Supreme
Court accepted

> for purposes of [its] decision both the court's finding that while still under his care
> plaintiff suspected defendant had done something wrong, and its implicit judgment
> that such suspicion satisfied the requirement that in order for a claim to accrue, the
> plaintiff actually or constructively knew her injury was due to another's fault or
> neglect.
>
> [*Abboud, supra,* 111 *N.J.* at 63, 543 *A.2d* 29.]

However, the Supreme Court disagreed "with the conclusion that
these findings precluded consideration of the relationship, if any,
between defendant's representations and plaintiff's delay in com-
mencing the action." *Id.* at 63, 543 *A.2d* 29. It emphasized that
"[t]he discovery rule is essentially a rule of equity" and that "the
decision on when a claim accrued requires 'more than [ ] simple
factual determination[s].' " *Id.* at 63–64, 543 *A.2d* 29 (quoting
*Lopez, supra,* 62 *N.J.* at 273, 275, 300 *A.2d* 563). *See also Savage*

*v. Old Bridge–Sayreville Medical Group, P.A.,* 134 *N.J.* 241, 250, 633 *A.*2d 514 (1993) (remanding for a hearing as to when plaintiff "was aware of or should have been aware of the facts that would suggest to a reasonable person exercising ordinary diligence that the conduct of a third party may have caused her injurious condition and that the conduct was possibly lacking in due care.").

In *Abboud* the Supreme Court remanded for further proceedings to "evaluate or weigh [plaintiff's] claim that defendant's various representations reasonably induced her not to sue within the normal limitations period." *Id.* at 64, 543 *A.*2d 29. The plaintiff there "apparently did not consider a transient injury important enough to seek damages, despite the various uncomfortable symptoms she was experiencing," and "[t]he evidence strongly implie[d] that plaintiff's assumption that she would eventually recover was inspired solely by defendant's various explanations and representations." *Id.* at 65, 543 *A.*2d 29. *See also Lynch v. Rubacky,* 85 *N.J.* 65, 424 *A.*2d 1169 (1981), in which the Supreme Court reinstated a complaint that had been dismissed because it was not filed within two years of "plaintiff's initial consultation" with a second orthopedic surgeon who she saw because "plaintiff ... sensed that something was 'wrong' with her ankle and was 'dissatisfied' with her treatment" and surgery performed by the first. *Id.* at 74–75, 424 *A.*2d 1169. The second surgeon "did nothing in the initial course of his treatment of [plaintiff] to discredit or cast [defendant] in a professionally unfavorable light," *id.* at 76, 424 *A.*2d 1169, and did not do so for another three months (after he performed another operation) which was within two years of the filing of the complaint. *Id.* at 77–78, 424 *A.*2d 1169.

We do not suggest that the accrual of a cause of action must await receipt of an expert opinion that the potential defendant was negligent. *See Baird v. American Medical Optics, supra,* 155 *N.J.* at 68, 713 *A.*2d 1019; *Burd v. New Jersey Tel. Co.,* 76 *N.J.* 284, 291–92, 386 *A.*2d 1310 (1978). However, like *Abboud* and *Lynch,* this case involves continued treatment after plaintiff be-

came dissatisfied with the results of a practitioner's performance.[5] Dr. Langer told plaintiff to return to defendant's care in 1989, and the record does not suggest plaintiff was given contrary advice prior to April 29, 1990, two years before the complaint was filed. In these circumstances, the trial judge must consider the impact of plaintiff's continued treatment with the defendant in determining when the cause of action accrued.

In *Abboud* the Supreme Court remanded for "a new *Lopez* hearing." *Id.* at 58, 543 *A.2d* 29. In reversing the judgment of dismissal in this case, we do not preclude defendant from seeking a further *Lopez* hearing at which the timing of plaintiff's visits to Doctors Halpern and Rosenbloom may be pursued, together with the nature of plaintiff's discussions with them and with defendant. In essence, we conclude that the *Lopez* hearing may have been incomplete, perhaps because, as plaintiff's counsel insists, she "was caught by surprise" by defendant's request for same "right before jury selection."

## IV.

The judgment is reversed, and the matter is remanded to the Law Division for further proceedings consistent with this opinion. No costs.

---

[5] Neither party cites *Abboud* or *Lynch*. Plaintiff, however, refers to her deposition where she testified that defendant told her "[a]s soon as we're through with the retainer, your teeth will settle back into place." In her reply brief before us, plaintiff insists that "defendant's constant assurances made her unsure and she continued his treatment especially since Dr. Langer told her to return to her dentist."