**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3269-16T2

LYNDA FERRARI,

    Plaintiff-Appellant,

v.

JOAN F. O'SHEA, M.D.,

    Defendant-Respondent,

and

VIRTUAL WEST JERSEY HOSPITAL,

    Defendant.

_____

Argued May 8, 2018 — Decided July 13, 2018

Before Judges Reisner and Hoffman.

On appeal from Superior Court of New Jersey, Law Division, Camden County, Docket No. L-3731-14.

Sherri L. Warfel argued the cause for appellant (Stark & Stark, attorneys; Sherri L. Warfel, of counsel; Alex J. Fajardo, on the brief).

Thomas M. Walsh argued the cause for respondent (Parker McCay, PA, attorneys; Thomas M. Walsh and Mary Kay Wysocki, of counsel; Kathryn A. Somerset, on the brief).

PER CURIAM

Plaintiff Lynda Ferrari appeals from a February 3, 2017 order, dismissing her medical malpractice claim against Dr. Joan F. O'Shea on statute of limitations grounds. Plaintiff also appeals from a March 20, 2017 order denying her motion for reconsideration.[1] Because we conclude plaintiff was entitled to the benefit of the discovery rule, we reverse the orders on appeal and remand the case to the trial court.

I

We briefly summarize the facts relevant to our disposition. In April 2006, plaintiff fell down some steps at her place of employment, and injured her right knee and lower back. She received treatment for her injuries through her employer's workers' compensation plan. On July 23, 2008, Dr. O'Shea, to whom plaintiff was referred by the compensation carrier, performed surgery to address plaintiff's right-sided herniated discs at L4-L5 and L5-S-1.

The surgery did not alleviate plaintiff's pain and she began to develop additional physical problems. According to plaintiff,

---

[1] The court dismissed plaintiff's complaint against co-defendant Virtua-West Jersey Health System, Inc. (improperly impleaded as Virtual West Jersey Hospital), by order of August 21, 2015. Plaintiff did not appeal from that order, and the co-defendant is not participating in this appeal.

when she told Dr. O'Shea that she was still in pain, Dr. O'Shea assured her that "it's going to take time to heal, and it will subside." Thereafter, plaintiff went to one workers' compensation doctor after another, seeking treatment for her persistent pain. None of them criticized the treatment Dr. O'Shea had provided, until Dr. Anton Kemps issued a report in September 2012.

According to her complaint, filed on September 29, 2014, plaintiff first learned that Dr. O'Shea may have committed malpractice, when plaintiff received a September 28, 2012 report from Dr. Kemps, stating that there was no indication that plaintiff "had any material placed within her disc spaces to replace the removed disc." Dr. Kemps stated that the absence of replacement material made plaintiff vulnerable to develop new herniations. According to the complaint, a review of Dr. O'Shea's operative report did not show that any stabilization device was inserted to replace the removed disc. In her deposition testimony, plaintiff confirmed that she first learned that Dr. O'Shea may have done something wrong, when she found out about Dr. Kemps' September 28, 2012 report.

Defendant filed an answer in January 2015, pleading the statute of limitations, among other defenses. In February 2015, the case was stayed for ninety days to allow plaintiff to retain new counsel, due to the untimely death of her attorney. After

plaintiff obtained new counsel, the parties completed fact discovery, including plaintiff's deposition on July 14, 2016. During the deposition, defendant's counsel reminded plaintiff's counsel that "there is a statute of limitations issue in this case. And it's a significant one." Defendant filed a motion to dismiss on statute of limitations grounds on December 29, 2016.

The summary judgment record includes Dr. Kemps' September 28, 2012 report. It also includes a note from Dr. O'Shea, confirming that plaintiff's "L4-5 recurrent disc herniation . . . does come under the Workman's Compensation accident of April 29, 2006." The note is dated April 4, 2012, however the correct date was apparently April 4, 2013, because the note refers to information taken from Dr. O'Shea's "last note . . . from February 28, 2013." The February 28, 2013 note also confirms the presence of an additional herniation at L4-5, attributable to the original workers' compensation covered accident. In other words, viewed most favorably to plaintiff, Dr. O'Shea admitted in her notes that plaintiff experienced an additional herniation at the site of the operation.

In granting defendant's motion, the trial court relied on a January 29, 2009 report from Dr. Kemps to the workers' compensation carrier, in which Dr. Kemps noted that plaintiff had developed "arachnoiditis." The trial court also relied on an April 23, 2009

letter from plaintiff's workers' compensation attorney written to his adversary in the compensation case. The letter referred to Dr. Kemps' report, noting that plaintiff had developed arachnoiditis as a result of the surgery and asking that the insurer provide plaintiff continued medical coverage for that condition.[2]

Dr. Kemps' 2009 report stated that, according to Dr. O'Shea's notes, an August 2008 follow-up MRI had revealed "minimal enhancement of nerve roots of the L4-5 level consistent with arachnoiditis."[3] Dr. Kemps recommended a "five percent (5%) increase" in plaintiff's "partial total disability of the lumbar spine referable to surgical repair of disc herniations in the low lumbar area." There is no testimony or evidence, however, that Dr. Kemps' opinion would alert either a workers' compensation attorney, or a layperson such as plaintiff, that the surgery was a failure or that Dr. O'Shea had committed malpractice. To the contrary, Dr. Kemps' evaluation was that the arachnoiditis was of minimal significance, only warranting a five percent increase in

---

[2]  In Dr. O'Shea's deposition, she explained that arachnoiditis was "clumping of the nerve roots within the thecal sac."

[3]  Dr. O'Shea's notes are in the summary judgment record. She found some arachnoiditis, but on re-examination, found that the arachnoiditis had gone away.

plaintiff's partial total disability for workers' compensation purposes.

In denying plaintiff's reconsideration motion, the trial court relied on a March 6, 2012 evaluation by Dr. Goldstein, another workers' compensation doctor. Dr. Goldstein stated that "the operation did not help the patient, and as she recalls, it made things worse." The judge also rejected plaintiff's argument that defendant waived the statute of limitations defense through delay in asserting it.

II

The trial court treated defendant's dismissal motion as one for summary judgment. Accordingly, our review is de novo, employing the same standard as the trial court. See Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)). We review the denial of a reconsideration motion for abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfullment, 440 N.J. Super. 378, 382 (App. Div. 2015).

A medical malpractice claim must be filed within two years of the accrual date, which is usually the date of the negligent act. Szczuvelek v. Harborside Healthcare Woods Edge, 182 N.J. 275, 281 (2005). In an appropriate case, however, "a cause of action will be held not to accrue until the injured party

discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he [or she] may have a basis for an actionable claim." Ibid. (alteration in original) (quoting Lopez v. Swyer, 62 N.J. 267, 273 (1973)).

The goal of the discovery rule is to "avoid [the] harsh results that otherwise would flow from mechanical application of a statute of limitations." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 191 (2012) (alteration in original) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001)). The standard is "basically an objective one—whether plaintiff knew or should have known of sufficient facts to start the statute of limitations running." Caravaggio, 166 N.J. at 246 (quoting Baird v. Am. Med. Optics, 155 N.J. 54, 72 (1998)). In applying the rule, the court must also consider "whether the delay may be said to have peculiarly or unusually prejudiced the defendant." Lopez, 62 N.J. at 275-76.

Plaintiff presents the following arguments on this appeal:

> I. THE COURT ERRED IN DETERMINING THAT PLAINTIFF SHOULD HAVE KNOWN THAT DEFENDANT'S SURGERY WAS A DEVIATION FROM THE STANDARD OF CARE BECAUSE HER LAWYER AUTHORED A LETTER THAT CLAIMED SHE HAD A PERMANENT BACK INJURY
>
> II. THE COURT ERRED IN FAILING TO CONSIDER THAT THE DEFENDANT WAS NOT PREJUDICED BY PROPER APPLICATION OF THE DISCOVERY RULE

III. THE COURT ERRED IN FAILING TO CONSIDER THAT THE DEFENDANT WAIVED THE STATUTE OF LIMITATIONS DEFENSE BY LITIGATING THE CASE THROUGH COMPLETION OF DISCOVERY TO THE EVE [OF] TRIAL

Plaintiff's third point is without merit. Defendant timely asserted the statute of limitations in its answer. Further, defendant needed to conduct discovery in order to develop evidence in support of the motion, and defense counsel reminded plaintiff's counsel of the defense during discovery. See Cipriani Builders, Inc. v. Madden, 389 N.J. Super. 154, 173-74 (App. Div. 2006).

However, we agree with plaintiff that Dr. Kemps' September 28, 2012 report was the first concrete information she received suggesting that Dr. O'Shea made a mistake in performing the surgery. None of the other information defendant cites was reasonably likely to inform either plaintiff or her workers' compensation attorney that Dr. O'Shea had done anything wrong.

"[W]here a plaintiff knows of an injury, but fault is not self-evident or implicit in the injury itself, it must be shown that a reasonable person would have been aware of such fault in order to bar the plaintiff from invoking the discovery rule." Martinez v. Cooper Hospital-Univ. Med. Ctr., 163 N.J. 45, 55 (2000). "A discovery rule analysis does not rise or fall on the personal characteristics of plaintiffs, but on the circumstances

in which they find themselves and their responses to those circumstances." Id. at 56.

In this case, plaintiff was involved in a workers' compensation case that went on for years. The source of plaintiff's various medical problems was by no means clear or self-evident. Dr. O'Shea herself told plaintiff that her persistent pain could be attributed to the normal healing process. The insurance company referred plaintiff to many different doctors, each one trying to determine the cause of her persistent back pain, leg pain, and other symptoms. Until Dr. Kemps' September 28, 2012 report, none of the doctors suggested that Dr. O'Shea was at fault. Plaintiff's expert report supports an inference that the workers' compensation system itself tended to obscure the problem, by compartmentalizing plaintiff's care among many different doctors, none of whom took a holistic or global view of her health condition.

We also agree with plaintiff that there is no evidence that defendant would be prejudiced by application of the discovery rule. See Lopez, 62 N.J. at 275-76. Defendant did not present any evidence of prejudice through the passage of time. The medical records themselves document plaintiff's condition before, during and after the surgery. In her deposition, Dr. O'Shea did not evince any lack of memory as to pertinent events. Although

defendant had not yet served an expert report, fact discovery had been completed and the case had a trial date, at the time the court dismissed the complaint.

At this point, the issue is not whether plaintiff has a meritorious case or whether she is likely to prevail at trial. The only issue is whether she should have her day in court or whether her complaint should be barred by the statute of limitations. We conclude that plaintiff is entitled to the benefit of the discovery rule. Accordingly, we reverse the orders on appeal, reinstate the complaint, and remand this case to the trial court.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3269-16T2