**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."  Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited.  R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1749-20

AJAX MORTGAGE LOAN TRUST
2019-A, MORTGAGE-BACKED
SECURITIES, SERIES 2019-A,
BY U.S. BANK NATIONAL
ASSOCIATION, as Indenture
Trustee,

     Plaintiff-Respondent,

v.

KIRK LOURY, a/k/a KIRK E.
LOURY,

     Defendant-Appellant,

and

BRENDA J. PASCALE LOURY,
FLEET NATIONAL BANK, n/k/a
BANK OF AMERICA, N.A.,

     Defendants.

_____

Submitted March 21, 2022 – Decided July 11, 2022

Before Judges Fasciale and Sumners.

On appeal from the Superior Court of New Jersey, Chancery Division, Mercer County, Docket No. F-021065-18.

Kirk Loury, appellant pro se.

Friedman Vartolo LLP, attorneys for respondent (Michael Eskenazi, on the brief).

PER CURIAM

In this residential foreclosure matter, defendant Kirk Loury appeals from three orders: a January 24, 2020 order dismissing his counterclaim asserting two claims based on an alleged violation of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20; a September 2, 2020 order denying his motions to vacate the dismissal order, reinstate the counterclaim, treat the foreclosure action as contested, and resume a discovery schedule referenced in a case management order; and a February 11, 2021 final order of judgment of foreclosure. We affirm.

I

On January 29, 2004, Loury and his wife Brenda J. Pascale Loury[1] (collectively "defendants") executed a non-purchase money mortgage to refinance their home in Princeton Junction (the property) to the World Savings

---

[1] Brenda is also a defendant in this matter but because she is not a party to this appeal, we refer to Kirk by his last name.

Bank to secure a $275,100 adjustable-rate mortgage note (Note) commencing March 8. The Note was a pick-a-payment (PAP) loan with four payment options: "1) a fully amortizing [thirty]-year payment, 2) a fully amortizing [fifteen]-year payment, 3) an interest-only payment, and 4) a minimum payment." Per the Note's terms, the initial interest rate of the loan was 4.871 percent and it stipulated that the interest rate may change starting March 22, 2004 and "on every other Monday thereafter." It also stated the loan had a lifetime maximum interest rate limit of 11.95 percent.

On April 4, 2007, the parties entered a loan modification agreement (2007 Modification) whereby the loan's adjustable interest rate was temporarily converted to a fixed interest rate of 5.95 percent.

In 2009, upon defendants' request to change their interest rate from an adjustable rate of interest to a fixed rate of 4.98 percent, Wachovia Mortgage (Wachovia)[2] sent defendants a conversion notice request form to be completed and returned. The notice contained the language, "[i]f the loan is currently payable in biweekly installments, the undersigned understand that the loan will convert to monthly installments." On July 9, Wachovia accepted the request, and effective on the August 15 payment due date, defendants' bi-weekly

---

[2] World Savings Bank was succeeded by Wachovia.

A-1749-20

payments were $1,724.51 at a fixed interest rate of 4.98 percent for the remainder of the loan's term (2009 Conversion).

After defendants failed to make payments for six months, Wells Fargo Bank (Wells Fargo)[3] filed a complaint on October 18, 2018, seeking foreclosure on the property and payment of the entire "unpaid principal together with interest at the initial rate of 4.871[] [percent] pursuant to the terms of the Note, per annum from April 15, 2018, plus late penalties . . . now due on the Note and Mortgage plus any sums advanced for the payment of taxes or insurance premiums."

In their timely-filed pro-se answer, defendants asserted two affirmative defenses. They contended the complaint's mortgage and Note terms were incorrect. Specifically: (1) the interest rate was 4.98 percent, not 4.871 percent; (2) the payment frequency was monthly, not bi-weekly; (3) the payment due date was the 15th of each month, not "every other Monday thereafter"; and (4) the payment amount was $1,724.51 each month, not $504.98 every two weeks. Defendants next contended that prior to filing its complaint, plaintiff initiated a debt relief program that provided additional terms and conditions to the

---

[3] Wells Fargo was successor by merger to Wells Fargo Bank Southwest, which succeeded Wachovia.

mortgage but misrepresented the program because the only option offered to them was a short sale instead of allowing them to temporarily make lower monthly payments before making regular full payments to maintain their ownership of the property.

Almost a year later, on or about November 4, 2019, Loury, believing the $504.98 bi-weekly payment was inaccurate, filed a pro se counterclaim alleging fraud under the CFA, N.J.S.A. 56:8-2, and unjust enrichment. Loury asserted plaintiff "knowingly concealed and suppressed the methods used to generate the . . . initial [p]rincipal . . . [it] used as a material input for the Converted Note's amortization schedule to calculate the $1,724.51 monthly payment." He asserted the Note provided a low initial interest rate that, when combined with the 7.5 percent annual Payment Cap, kept the subsequent years' payments from catching up to the previous year's deferred interest, forcing an inflated accumulation of deferred interest. He claimed the Note included an inflated principal from the fraudulent processing of deferred interest as additional principal from March 2004 until the Note's material terms and conditions terminated in July 2009, resulting in an amount "at least $41,700 higher tha[n] it should have been at the time plus over $18,000 of interest." Loury argued plaintiff "laundered the ill-gotten inflated principal and interest through the

Converted Note and locked-in higher future interest income for its maturity," in violation of the CFA. Plaintiff, according to Loury, intentionally set the first bi-weekly payment lower than the amortized payment in an effort to "push unpaid interest into a '[d]eferred' status" in order to increase its revenue. Finally, he contended plaintiff did not disclose the payment methodology used to determine the bi-weekly payment nor did it provide an amortization schedule, and, instead, "fraudulent[ly]" presented the "[a]ppearance" of "a competent payment amortization."

Plaintiff moved under Rule 4:6-2(e) to dismiss the CFA counterclaim as time-barred and for failure to state a cause of action. In his oral decision, the motion judge explained the counterclaim was time-barred and entered a January 24, 2020 order dismissing it. The judge later denied Loury's motion for reconsideration, reiterating his initial decision.

On December 3, 2020, plaintiff moved for final judgment under Rule 4:64-1(d)(1). When Loury objected to the judgment amount, the Office of Foreclosures referred the matter to the trial court pursuant to Rule 4:64-1(d)(3). On February 11, 2021, another judge issued a final order striking defendants' objection to amounts due and the judgment of foreclosure.

On appeal, Loury argues:

A-1749-20

POINT I

THE MOTION TO DISMISS EVIDENCE STANDARD IS TO LIBERALLY ACCEPT PRESENTED FACTS AND CLAIMS: [THE MOTION JUDGE] ERRED IN IGNORING THE MOTION TO DISMISS EVIDENCE STANDARD[.]

POINT II

THE NEW JERSEY FRAUD DISCOVERY RULE TOLLS THE SIX-YEAR STATUTE OF LIMITATIONS FOR CFA CLAIMS: [THE MOTION JUDGE] ADMITTED HIS IGNORANCE OF THE DISCOVERY RULE YET STILL DISMISSED THE COUNTERCLAIM[.]

POINT III

THE ONLY BASIS TO GRANT A MOTION TO DISMISS IS IF THERE IS A FAILURE TO STATE A CLAIM IN WHICH RELIEF CAN BE GRANTED: CLAIMS IN THE COUNTERCLAIM AND THE RELIEF SOUGHT WERE PRODUCED WITH PARTICULARITY[.]

POINT IV

ADHESION CONTRACT LAW PROVIDES TWO CORE DOCTRINES—REASONABLE EXPECTATIONS AND UNCONSCIONABILITY: [THE MOTION JUDGE] ERRED IN IGNORING ADHESION CONTRACT LAW AND PLACED A DUE DILIGENCE STANDARD ON THE APPELLANT THAT WAS FAR BEYOND THE SCOPE FOR JUDGING EVIDENCE FOR A MOTION TO DISMISS[.]

7

POINT V

THE FRAUD WAS IN THE NOTE'S DETERMINATION OF A PAYMENT AMOUNT THAT WAS IMPOSSIBLE TO CALCULATE FROM THE NOTE'S STATED TERMS: [THE MOTION JUDGE] ERRED IN IGNORING THE FRAUD IN THE PAYMENT AMOUNT AND WRONGLY PLACED THE FRAUD ALLEGATION ON THE DEFERRED INTEREST[.]

II

We first address Loury's argument that the motion judge had no legal authority to dismiss his CFA counterclaim on the basis that it was time-barred under the CFA because it was not filed within six years of executing the Note. He argues he was unaware of his claim when he and his wife executed the Note and mortgage, and only discovered plaintiff's fraud in 2019. Thus, the judge was premature in dismissing his claim without allowing him to conduct discovery. Moreover, Loury contends the motion judge failed to comply with Rule 1:7-4(a) by issuing his findings of fact and legal conclusions in his oral decision.

Based upon our de novo review of the motion judge's order, accepting the facts asserted in the counterclaim, and according to Loury all favorable inferences set forth therein, Watson v. N.J. Dep't of Treasury, 453 N.J. Super.

8

42, 47 (App. Div. 2017), we conclude the motion judge properly applied Rule 4:6-2(e) in dismissing the counterclaim.

A claim under the CFA "shall be commenced within six years next after the cause of any such action shall have accrued." N.J.S.A. 2A:14-1(a). "[T]he date when a cause of action is deemed to have 'accrued' is 'the date upon which the right to institute and maintain a suit first arises.'" Belmont Condo. Ass'n v. Geibel, 432 N.J. Super 52, 82-83 (App. Div. 2013) (quoting Holmin v. TRW, Inc., 330 N.J. Super. 30, 35 (App. Div. 2000)). Nevertheless, "[t]o determine when [defendant's] fraud claims accrued, we apply the discovery rule, which delays the commencement of the limitations period in appropriate cases." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016). "The discovery rule is essentially a rule of equity," Lopez v. Swyer, 62 N.J. 267, 273 (1973), "designed 'to avoid harsh results that otherwise would flow from mechanical application of a statute of limitations,'" Catena, 447 N.J. Super. at 53 (quoting Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 426 (1987)). In fraud cases, the discovery rule is justified consideration that "the victim's lack of awareness of the fraud is the wrongdoer's very object. The rule thus prevents the defendant from benefiting from his own deceit." Id. at 54.

Under the discovery rule, "a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Belmont, 432 N.J. Super. at 83 (quoting Lopez, 62 N.J. at 272). "The party seeking the rule's benefit bears the burden to establish it applies." Catena, 447 N.J. Super at 53.

Whether a cause of action is barred by a statute of limitations is a question of law that we review de novo. Id. at 52 (citing Estate of Hainthaler v. Zurich Com. Ins., 387 N.J. Super. 318, 325 (App. Div. 2006)). "The application of the discovery rule is for the court, not a jury, to decide." Ibid.

Loury maintains that between 2004 and 2009, the Note required a bi-weekly payment of $504.98, which was lower than the amortized payment needed to fulfill the Note's principal and accrued interest within the thirty-year term, constituting fraud under the CFA. We reject his contention that because he did not discover the fraud until plaintiff filed its foreclosure complaint in 2019, the statute of limitations did not begin to toll until his alleged discovery.

Loury's counterclaim began to accrue when the Note was executed in 2004, because that is when his "exercise of reasonable diligence and intelligence should have discovered" there may be a basis for an actionable claim. Belmont,

10

432 N.J. Super. at 83.  The bi-weekly payment, associated terms, and interest rates were clear on the face of the Note in 2004.  It was not until 2019 that Loury analyzed the Note, leading to his accusation of fraud.  Loury even concedes that "had interest rates remained stable in subsequent years to the 4.871[] [percent] rate stated in the Note, . . . deferred interest . . . would still accrue with the $504.98 bi-weekly payment."  Therefore, even without knowing and applying the future interest rates, Loury would have been able to discover that the initial payment would accrue deferred interest in 2004.  By exercising reasonable diligence, Loury would have discovered the alleged fraud in 2004 when all the information he needed for his findings were set forth in the Note he and his wife executed.

Accordingly, the motion judge was correct that the discovery rule did not delay the running of the statute of limitations for Loury's CFA counterclaim until 2018, when the foreclosure complaint was served upon him and his wife.  The statute of limitations to file his CFA counterclaim tolled in 2010, six years after the Note was executed.  The judge adequately complied with Rule 1:7-4 and explained his findings of fact and legal conclusions in his oral decision; therefore, dismissal of Loury's counterclaim as time-barred was appropriate.

After our review of the record, as well as controlling law, we conclude that Loury's other arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1749-20