**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3863-16T2

SOMERVILLE TIC II, LLC,
SOMERVILLE TIC IV, LLC,
SOMERVILLE TIC VII, LLC,
SOMERVILLE TIC VIII, LLC,
SOMERVILLE TIC X, LLC, and
SOMERVILLE TIC XII, LLC,

     Plaintiffs,

and

SOMERVILLE TIC III, LLC,
SOMERVILLE TIC V, LLC,
SOMERVILLE TIC VI, LLC,
SOMERVILLE TIC IX, LLC,

     Plaintiffs-Appellants,

v.

DAVID HAY, SOMERVILLE TIC I, LLC,
SOMERVILLE TIC XI, LLC, CORTES &
HAY TITLE AGENCY, INC, CORTES &
HAY TITLE AGENCY, LLC, MARK HAY,
STERLING MANAGEMENT SERVICES, LLC,
TURNBULL REAL ESTATE, LLC, and
GEORGE DILTS, d/b/a DILTS & KOESTER,

     Defendants,

and

PROVIDENT FINANCIAL SERVICES, INC.,
f/k/a TEAM CAPITAL BANK,

      Defendant-Respondent.

_____

Argued July 16, 2018 — Decided August 20, 2018

Before Judges Whipple and Suter.

On appeal from Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1160-16.

Jonathan T. Guldin argued the cause for appellants Somerville TIC III, LLC, Somerville TIC V, LLC, Somerville TIC VI, LLC and Somerville TIC IX, LLC (Clark Guldin, attorneys; Jonathan T. Guldin, on the briefs).

Anthony J. Sylvester argued the cause for respondent (Sherman Wells Sylvester & Stamelman, LLP, attorneys; Anthony J. Sylvester, of counsel and on the brief; Matthew F. Chakmakian, on the brief).

PER CURIAM

Plaintiffs, Somerville TIC III, LLC, Somerville TIC V, LLC Somerville TIC VI, LLC, and Somerville TIC IX, LLC, appeal from the December 2, 2016 and January 30, 2017 orders granting defendant Provident Financial Services, Inc.'s motion to dismiss and denying plaintiffs' motion for reconsideration.

Our recitation of the facts relies upon the allegations in plaintiffs' complaint, which asserts that defendant David Hay solicited various individuals, friends, and acquaintances, to invest in the purchase of a commercial building and parking deck

(the Property) in Somerville, as 1031[1] exchange investment opportunities. Hay (acting through Somerville TIC I, LLC[2]), together with five individuals (acting through other TICs), entered into a Tenancy in Common Agreement (TIC Agreement) effective March 27, 2006. The "Original Six" included TIC I (Hay), and TIC II (Sandy Maxwell), TIC III (James Solakian), TIC IV (Norman Mannino), TIC V (Robert Fulper),[3] and TIC VI (Ruby Huttner).

The TIC Agreement designated TIC I (Hay), as the "Sponsor/Manager" and granted him "complete authority, power, and discretion to supervise and manage all operations and aspects of the property subject to certain exceptions." Those exceptions required the consent of a majority in interest of the other TIC owners for: "(1) a sale or exchange of all or part of the property; (2) execution of a contract with an Owner or its affiliate; or (3)

---

[1] A 1031 exchange investment opportunity is where owners of real estate may shelter capital gains obtained from the sale of such real estate as long as the proceeds are used to purchase "like-kind" property within a certain time period.

[2] As shorthand and for ease of reference we refer to the Somerville TICs as TIC I, TIC II, TIC III, et cetera.

[3] At some point, Mr. Fulper also became involved through another entity, TIC IX. He also later purchased all membership interests in Somerville TIC III from Mr. Solakian.

taking or failing to take any action that would make it impossible for the owners to carry on the business of owning the property."

In addition to the monies collected from the above entities, in March 2006, CitiGroup Global Markets Realty Corp. (CitiGroup) issued a ten-year loan of $8,595,000, and received a mortgage on the Property. The mortgage acceleration clause provided upon the sale or transfer of all or any part of the Property, or any interest therein CitiGroup could declare all sums secured by the Mortgage immediately due and payable. The mortgage also exacted warranties that the Original Six would not incur any indebtedness, secured or unsecured, direct or indirect, absolute or contingent other than the CitiGroup Mortgage, and no indebtedness other than the CitiGroup Mortgage could be secured by the property. Further, each of the Original Six executed personal guarantees for the CitiGroup loan.

After the closing, Hay sold 12.35% of his ownership interest to TIC VII (Martin Strassman), and TIC VIII (Alan Epstein). In December 2006, Hay sold 4.75% of his ownership interest to TIC X (Herman and Diana Holmes). In January 2007, he sold 2.68% of his ownership interest to TIC XI (Kamal Kumar). In June 2007, he sold 6.74% of his ownership interest to TIC XII (David Miller Living Trust). Through these transactions, allegedly done without the knowledge or consent of the other owners, and in violation of the

TIC Agreement, Hay divested all of his ownership interests in the property, keeping the proceeds of these sales for himself.

Also after the closing, Hay opened upon a personal checking account with Team Capital Bank[4] (the Bank), where he was a founding member and sat on the Board of Directors. In December 2007, Hay, using powers delegated to him under the TIC Agreement, obtained a loan of $365,000 from the Bank (the Bank Loan), and granted the Bank a second mortgage (the Bank Mortgage) against the Property. The Bank Mortgage identified TICs I, II, III, IV, V, VI, VII, VIII, IX, X, and XII as borrowers. Hay signed all documents regarding the Bank Mortgage and did not disclose this indebtedness to plaintiffs. It is unclear whether Hay and or TIC I retained any ownership of the property at that time.

Hay deposited the proceeds from the Bank Loan into his personal checking account. Between 2008 and 2016, Hay used revenue from the property to make payments on the Bank Loan.

The complaint describes a systematic pattern of self-dealing and concealment. Hay represented he was still a majority owner, and provided misleading budgets and other financial documents. It was not until 2016, when Hay and his son invited the various TIC Agreement investors to a meeting, that plaintiffs first met each

[4] Team Capital Bank merged with and into Provident Financial Services in 2014.

other and discussed their concerns. Plaintiffs later obtained bank records and other documents revealing the full extent of Hay's misconduct.

In February 2016, CitiGroup notified Hay it had transferred the CitiGroup Mortgage to an asset management group, C-III Asset Management. C-III requested certain documents from Hay, which he did not produce. Plaintiffs allege Hay's failure to produce the documents cost them $45,000 in penalties.

In 2016, when plaintiffs discovered Hay's misconduct regarding the Bank Loan and Bank Mortgage, and the maturity date on the CitiGroup Mortgage was approaching, Hay paid off the existing balance of the Bank Loan, totaling approximately $200,000. He represented to plaintiffs that he believed no more exposure to default under the CitiGroup Mortgage existed. However, around March 2016, Hay received a payoff letter from C-III, reporting the balance due on the CitiGroup Mortgage at $7,529,681.99, an amount plaintiffs assert was $500,000 more than they were expecting.

Plaintiffs assert because of David Hay's misconduct and violations of the CitiGroup Mortgage they suffered significant and total financial losses. In May 2016, C-III declared the CitiGroup Mortgage in default, and in June 2016, advised the Original Six that penalties were being incurred as a consequence of the ongoing

6

A-3863-16T2

non-compliance with its demands for documents related to the CitiGroup loan and Mortgage it had requested from Hay.

In June 2016, C-III informed the Original Six it had learned of a series of transfers of interest in the property. However, before C-III discovered the full extent and nature of David Hay's misconduct, plaintiffs were able to obtain a payoff demand totaling in excess of $7.83 million dollars from C-III, including various penalties, interest, and fees.

In August 2016, plaintiffs relinquished fifty-one percent of their equity to an individual who purchased the property, paying off the CitiGroup Mortgage. Plaintiffs allege that they had to loan an additional $500,000 of their own funds to facilitate the closing.

On September 2, 2016, plaintiff TICs II, III, IV, V, VI, VII, VIII, IX, X, and XII filed a complaint and jury demand against numerous defendants, including the Bank. The sole count against the Bank asserts lender liability and negligence stemming from the Bank Loan and Mortgage given to Hay. In May 2017, plaintiffs entered into confidential settlements and a stipulation of dismissal with prejudice with all defendants except the Bank.

On November 2, 2016, the Bank moved to dismiss plaintiffs' complaint with prejudice. The motion judge heard argument on December 2, 2016, and granted the Bank's motion dismissing

plaintiffs' complaint with prejudice because the plaintiffs filed their complaint beyond the statute of limitations. Plaintiffs argued the statute should be tolled through application of the discovery rule, but the court rejected that assertion, determining plaintiffs could have discovered the Bank Loan with their own investigation.

Even if the statute of limitations were tolled, the judge found, plaintiff's allegations against defendant, though possibly articulating a cause of action in negligence and duty and breach, alleged no damages. On the face of the complaint, the judge noted, after the plaintiffs were advised the bank loan constituted a default under the mortgage and exposed them to significant default interest, David Hay paid off the existing balance of the Team Capital loan.

On December 28, 2016, plaintiffs moved for reconsideration, which the judge denied. TICs III, V, VI, and IX appealed. They argue the motion judge erred by granting the Bank's motion to dismiss because the statute of limitations should have been tolled and because they asserted a cognizable claim for damages.

We review an order granting a motion to dismiss de novo. Castello v. Wohler, 446 N.J. Super. 1, 14 (App. Div. 2016) (citation omitted). A motion to dismiss a complaint for failure to state a cause of action must be denied if, giving plaintiff the

benefit of all allegations and all favorable inferences, a cause of action has been made out. R. 4:6-2(e); see Burg v. State, 147 N.J. Super. 316, 319-20 (App. Div. 1977).

The inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. We search the complaint "in depth and with liberality" to see whether the basis for a cause of action may be found even in an obscure statement of a claim; and opportunity should be given to amend if necessary. Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746 (1989) (citations omitted).

Plaintiffs assert they were unaware of the Bank Loan and Mortgage until 2016, thus their 2016 complaint filing was timely. The relevant statute of limitations is N.J.S.A. 2A:14-1, which requires an action be commenced within six years after the cause of action accrues. See The Palisades At Fort Lee Condo. Ass'n, Inc. v. 100 Old Palisade, LLC, 230 N.J. 427, 434 (2017).

The Bank Loan and Mortgage were executed in December 2007, and the statute of limitations would have run on any cause of action stemming from these transactions in 2014. Plaintiffs argue the court should have applied the discovery rule to toll the statute of limitations. The Palisades At Fort Lee Condo. Ass'n, Inc., 230 N.J. at 435. Under this rule, "a cause of action will not accrue until the injured party discovers, or by an exercise

of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." Lopez v. Swyer, 62 N.J. 267, 272 (1973).

Plaintiffs argue the judge, at the very least, should have conducted a hearing under Lopez to determine whether they were entitled to the benefit of the discovery rule. We agree. However, plaintiffs did not request a Lopez hearing at the motion hearing, hence we review the omission under the plain error standard. R. 2:10-2. We will not reverse unless plaintiffs show error clearly capable of producing an unjust result. Ibid.

Typically, upon by a defendant's motion or answer asserting a statute of limitations defense, a court will hold a Lopez hearing prior to trial, to determine when the plaintiff reasonably should have discovered that he or she had a cause of action. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 336 (2010) (citing Lopez, 62 N.J. at 267). A hearing is not required in every case, but should be held "when the facts concerning the date of the discovery are in dispute." J.P. v. Smith, 444 N.J. Super. 507, 528 (App. Div. 2016) (citation omitted); see also Dunn v. Borough of Mountainside, 301 N.J. Super. 262, 274 (App. Div. 1997).

Here, the date of discovery for the cause of action was in dispute. Plaintiffs argue they were unaware of the transaction and the attendant cause of action until 2016, and defendant argues

that, with reasonable diligence, plaintiffs could have discovered the transaction in 2007 because the Bank Mortgage was recorded. Based on the face of the complaint, read with liberality as required, we agree these assertions are supported by the record.

As a general principle, when a mortgage is recorded, it becomes part of the public record. See Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 332 (Super. Ct. 2010). "Parties are generally charged with constructive notice of instruments that are properly recorded." Cox v. RKA Corp., 164 N.J. 487, 496 (2000) (citing Friendship Manor, Inc. v. Greiman, 244 N.J. Super. 104, 108 (App. Div. 1990)). Furthermore, under N.J.S.A. 46:26A-12, "Any recorded document affecting the title to real property is, from the time of recording, notice to all subsequent purchasers, mortgagees and judgment creditors of the execution of the document recorded and its contents." N.J.S.A. 46:26A-12(a).

However, the language of N.J.S.A. 46:26A-12 has questionable applicability here. Where a plain reading of the statute "leads to a clear and unambiguous result, then the interpretive process should end, without resort to extrinsic sources." State v. D.A., 191 N.J. 158, 164 (2007) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)). A plain reading of this statute's constructive notice provisions does not impute such knowledge to prior mortgagors. Reasonable diligence does not require a current owner of a property

A-3863-16T2

interest to conduct ongoing searches of the public record to protect against fraud. Plaintiffs had no obligation to conduct ongoing searches of the public record to defend against the fraudulent execution of a new mortgage in their name. The existence of the properly recorded Bank Mortgage was insufficient to put plaintiffs on notice and the trial court's failure to conduct a <u>Lopez</u> hearing was plain error, capable of producing an unjust result, and we remand for that purpose.

Plaintiffs next contend the trial court erred by finding plaintiffs did not establish a claim for damages against the Bank. They assert the Bank acted negligently by engaging in an interested transaction, which injured plaintiffs, and by failing to disclose the terms of the transaction to plaintiffs. "To prevail on a claim of negligence, a plaintiff must establish four elements: (1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." <u>Fernandes v. DAR Dev. Corp., Inc.</u>, 222 N.J. 390, 403-04 (2015) (citing <u>Townsend v. Pierre</u>, 221 N.J. 36, 51 (2015)).

The motion judge noted plaintiffs had potentially pled duty and breach, but did not allege any damages resulting therefrom, and dismissed plaintiffs' complaint with prejudice. Our de novo review of the complaint considers whether the pleading, on its face, is adequate to survive a motion to dismiss.

Plaintiffs assert that for approximately eight years, between 2008 and 2016, revenue from the property that should have been paid in distributions to plaintiffs, was instead utilized to make payments on the Bank Loan. Next, plaintiffs assert they were forced to relinquish fifty-one percent of their equity in the property and had to "loan an additional $500,000 of their own funds to facilitate the closing." They allege these consequences were the result of Hay's actions which caused a default under the CitiGroup Mortgage. Although Hay paid off the balance of the loan, plaintiffs assert they suffered financial losses as a result of the transaction. As such, given the benefit of all the allegations and all favorable inferences, plaintiffs have adequately pled damages, and the trial court erred in granting defendant's motion to dismiss. R. 4:6-2(e).

Defendant asserts it owed no duty to plaintiffs. We have said that "creditor-debtor relationships rarely give rise to a fiduciary duty." United Jersey Bank v. Kensey, 306 N.J. Super. 540, 552 (App. Div. 1997) (citations omitted). There is "a general presumption that the relationship between lenders and borrowers is conducted at arms-length, and the parties are each acting in their own interest." Id. at 553 (citation omitted). However, "[t]he question of whether a duty exists is a matter of law" and "involves identifying, weighing, and balancing several factors —

the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and the public interest in the proposed solution." Id. at 551 (citing Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439 (1993)).

Here there are questions about Hay's relationship with the bank. In egregious cases, where the bank was self-interested in the transaction, courts have found that the bank owed a duty to a depositor or a borrower. See id. at 557. The motion judge stated plaintiffs "possibly articulated a cause of action in negligence." Until the motion judge completes a hearing and makes findings under Lopez, we consider it premature to address the viability of the judge's assessment.

The sole count explicitly asserted against the Bank labels the allegations as "Lender Liability/Negligence." Lender liability includes other potential claims, including those plaintiffs contend were implicit in their complaint. If the court grants plaintiffs leave to amend their complaint after the Lopez hearing, then they may detail such claims further. See Cardell, Inc. v. Piscatelli, 277 N.J. Super. 149, 155 (App. Div. 1994) ("Leave to amend pleadings should be freely given in the interest of justice."). "That 'broad power of amendment should be liberally exercised at any stage of the proceedings, including on remand after appeal, unless undue prejudice would result.'" Kernan v.

One Wash. Park Urban Renewal Assocs., 154 N.J. 437, 456-57 (1998) (quoting Pressler, Current N.J. Court Rules, comment on R. 4:9-1 (1998)).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION