**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4906-18T4

BERLIN CROSS KEYS
SHOPPING CENTER
ASSOCIATES, LLC,

     Plaintiff,

v.

STEPHEN SAMOST, ESQUIRE
and LAW OFFICES OF
STEPHEN SAMOST,

     Defendants,

and

SAMINVEST CO., LLC,

     Defendant/Third-Party
     Plaintiff-Respondent,

v.

WALMART STORES, INC.
and WALMART REAL
ESTATE BUSINESS TRUST,

     Third-Party
     Defendants-Appellants,

and

CARL FREEDMAN, MITCHELL COHEN, SCOTT CIOCCO, and MARK ARENCIBIA,

Third-Party Defendants.

_____

Argued telephonically March 23, 2020 –
Decided July 22, 2020

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-5114-12.

Donald A. Rea (Saul Ewing Arnstein & Lehr LLP) of the Pennsylvania bar, admitted pro hac vice, argued the cause for appellants (Donald A. Rea and Jordan D. Rosenfeld of the Maryland bar, admitted pro hac vice, and Amy L. Picolla, attorneys; Amy L. Piccola, Donald A. Rea, and Jordan D. Rosenfeld, of counsel and on the briefs).

Peter Jay Boyer argued the cause for respondent (Hyland Levin Shapiro LLP, attorneys; Peter Jay Boyer, of counsel and on the brief).

PER CURIAM

After a jury trial resulted in a $500,000 verdict against third-party defendants Walmart Stores, Inc. and Walmart Real Business Trust (collectively, Walmart), for making fraudulent misrepresentations, Walmart appealed from the trial court's earlier denial of its motion for summary judgment and its motion for

judgment under Rule 4:40-1.[1] In that appeal, Walmart argued that "the trial court erred in ruling that [third-party plaintiff Saminvest Co. LLC's (Saminvest)] claim was not barred by the statute of limitations." Berlin Cross Keys Shopping Ctr. Assocs., LLC v. Samost, No. A-3657-17 (Apr. 26, 2019) (Berlin I) (slip op. at 3). We affirmed the denial of summary judgment but remanded the denial of the motion for judgment. On remand, the trial court determined the issue and entered an order on May 30, 2019, again denying Walmart's motion. Walmart now appeals from that order.

On appeal, Walmart argues that Saminvest filed in 2016 its fraudulent misrepresentation claim against Walmart outside of the six-year statute of limitations applicable to fraud because Saminvest received a letter from Walmart in March 2008 that should have put Saminvest on notice of its claim against Walmart. We affirm, as we conclude from our de novo review that on remand the trial court's determination of the factual issues about the letter was supported by credible evidence and therefore its legal conclusion that the letter did not put Saminvest on notice of a claim in 2008 was correct.

---

[1] Although the parties referred to Walmart's motion for judgment as a motion for a directed verdict, see R. 4:37-2(b), we consider it to have been made Rule 4:40-1 because it was made at the close of all the evidence. However, the distinction is without any difference because the standard of review is the same.

Saminvest's claims against Walmart arose out of a transaction that initially contemplated that plaintiff Berlin Cross Keys Shopping Center Associates, LLC (BCK) would purchase land owned by Saminvest in the Borough of Berlin, develop a shopping center on the property, and then sell a portion to Walmart for the construction of a store. However, when BCK could not go forward with the project, the transaction morphed into a proposed direct sale of the subject property by Saminvest to Walmart, which was never consummated.

The failed transactions resulted in BCK filing a complaint in 2012 against Saminvest, its principal, defendant Stephen Samost, and his law firm, defendant the Law Office of Stephen Samost. On November 20, 2014, Saminvest filed a third-party complaint against Walmart and other parties. On May 26, 2016, Saminvest amended its third-party complaint, adding new claims, including the claim for fraudulent misrepresentation. By the time this matter was tried in 2018, the only claims that had to be resolved were those made by Saminvest against Walmart.

We described the facts surrounding the failed transactions in our earlier opinion and incorporate them here by reference. See Berlin I, slip op. at 3-10. We provide only the following summary of the facts and procedural history we earlier found as they relate to the present appeal.

A-4906-18T4

At the end of discovery in this matter, Walmart moved for summary judgment, arguing that New Jersey's six-year statute of limitations for fraud, N.J.S.A. 2A:14-1, barred Saminvest's claims against Walmart. In denying that motion, the trial court found that a reasonable jury could have concluded that during a phone call between Walmart's representative Matt Sitton and Samost, on behalf of Saminvest, after they exchanged certain letters in March 2008, Sitton reaffirmed Walmart's agreement to purchase the property once certain zoning issues were resolved. See Berlin I, slip op. at 10-11. The court also concluded that based on revisions Walmart made to a letter it sent to the Berlin Borough mayor, in March 2008, stating that "[a]t this time, Walmart will not be moving forward with the project," a jury reasonably could find that Walmart's letter was consistent with the terms of Sitton's oral promise on behalf of Walmart because the purchase would have been contingent on the resolution of the zoning appeals. Ibid.

During the ensuing trial, at the close of Saminvest's case, Walmart moved for judgment, which the court denied. The court reiterated that a jury could reasonably infer from the language Walmart used in a March 25, 2008 letter to Samost, and from Sitton's phone call to Samost after the exchange of letters, that Walmart was still abiding by Sitton's oral promise for Walmart to purchase the

5

property once the zoning appeals were resolved. Id. at 11-12. Walmart renewed its motion for judgment at the close of all of the evidence, and the trial court again denied the motion without making any additional findings. Id. at 12. Thereafter, the jury returned its verdict, the court entered judgment, and Walmart appealed. Id. at 13.

On appeal, Walmart argued that the trial court erred in denying its motion for summary judgment and its motion for judgment since Saminvest's claim for fraudulent misrepresentation was barred by New Jersey's six-year statute of limitations. Saminvest contended that the discovery rule tolled the statute of limitations. Ibid. In response, we issued our opinion affirming the trial court's denial of summary judgment, id. at 19, but remanded the matter after concluding that the trial court should have made "a determination on the discovery rule, and if necessary assess credibility, prior to the case being submitted to the jury for a verdict," as if it had conducted a Lopez hearing,[2] even though one was never requested by any party. Id. at 20. We directed the trial court on remand "to issue a ruling on when plaintiff's action accrued for purposes of the discovery rule" and to "issue findings based upon the trial record, rather than holding a new Lopez hearing on remand." Id. at 21.

---

[2] Lopez v. Swyer, 62 N.J. 267 (1973)

On remand, the trial court considered the matter and placed its comprehensive oral decision on the record on May 30, 2019 before issuing the order now under appeal. As part of its credibility findings, the court found Sitton incredible and relied upon specific portions of his direct testimony and responses to questions on cross-examination. Among them, the court noted that when Sitton was shown one email, he confirmed telling Samost that the two had a "verbal business agreement," but then testified that he understood such a statement to be non-binding. The court also found that Sitton's testimony about his presentation of the proposed deal with Saminvest to Walmart's real estate committee was "evasive," and that his failure to disclose the committee's rejection of the proposal to Samost undermined his credibility. The court also found equally damaging to Sitton's credibility was his testimony implying "it [was] permissible to be cavalier with the facts in all aspects of the real estate industry."

The court found Samost's testimony was credible especially about how Sitton confirmed to him that Walmart and Saminvest had a deal, provided that the zoning issues were resolved, despite Walmart's March 25, 2008 letter, because Walmart never stated in that letter that there was no deal. The court added that Samost's testimony about the conversation he had with Sitton, when

the promise for Walmart to buy the property from Saminvest was made, was clear, consistent, and unwavering. Moreover, Samost's "continued efforts to expend time, money, [and] resources" on appeals to preserve the zoning approvals supported Samost's version of the facts.

The trial court reviewed the history of the parties' transaction and noted Walmart's repeated assurances to municipal officials, BCK, and Samost of its intention to consummate the subject purchase even though there was never a written agreement between Walmart and BCK or Saminvest. The court concluded that April 2, 2009 was the earliest date that Saminvest's fraudulent misrepresentation claim could have accrued given that it was not until then that a Supreme Court decision resolved the zoning issues preventing the shopping center's development.

The court found that the letter Walmart sent to the Borough's mayor in late March 2008 did not, as Walmart argued, indicate that it had abandoned the project, but rather served two purposes. First, it prevented Walmart from being seen as a "stalking horse" by Berlin Borough or Camden County[3]; and it did not

---

[3] During the same period that Saminvest was pursuing the approvals and defending them in court actions, Walmart was aware that in order to thwart the project, the Borough and the County were contemplating a condemnation of Saminvest's property. According to the trial court,

"semantically" contradict Sitton's assurances to Samost that Walmart would honor its deal with Saminvest if the zoning appeals were preserved. According to the court, Walmart "was trying to keep peace with the Borough and . . . was trying to get . . . Samost to continue to expend resources to preserve the land use approvals." And, significantly, to that end, Walmart did not copy Saminvest with the letter when it was sent as it had with other written communications relating to the project.

Second, the letter did not refer to a transaction between Walmart and Saminvest, rather it applied to the only transaction the mayor was aware of— the one between BCK and Walmart. That conclusion was supported by revisions made to a draft of the letter that deleted a reference to Walmart "no longer having an intent to construct a store," and replacing it with Walmart not moving forward with the project. The former was not true as Walmart still intended to construct

> Walmart would [not] act as a stalking horse, in essence being used to drive up the value of the land in any type of condemnation proceeding that might possibly occur. This was important to Walmart with respect to not only Berlin Borough, but also with respect to Camden County and the State of New Jersey as they wanted to keep good relationships with these governing bodies because they appear, do business in, seek approvals of, [and] are regulated by, those governmental entities.

a store after its purchase from Saminvest, and the latter was correct as to its agreement with BCK.  According to the trial court, Walmart did not "want to make a misrepresentation about what they intended to do with . . . Samost" so it could "have it both ways[,] trying to keep peace with the Borough and . . . trying to get . . . Samost to continue to expend resources to preserve the land use approvals."

Turning to Walmart's March 25, 2008 letter to Samost, which Walmart asserted made clear its intention to not proceed with the Saminvest transaction, the trial court found here too the letter made no reference to the purchase from Saminvest and only related to the BCK agreement that was the subject of the then-pending court action filed by objectors to the approvals granted for that deal because the letter discussed notifying the court that the BCK purchase was terminated.[4]  Similarly, the trial court found that Samost's reply to that letter,

---

[4]  The March 25, 2008 letter to Samost that Walmart contends triggered the statute of limitations stated in relevant part:

> As you are aware, Wal-Mart had the right to purchase the property, or take an assignment of the right to purchase the property, from [BCK].  It was Wal-Mart's understanding that [BCK] had terminated its contractual rights and Wal-Mart's contractual rights regarding the property had terminated with [BCK's].  Accordingly, Wal-Mart believes that it has an

which Walmart contends acknowledged that Walmart was not proceeding with the direct purchase, only dealt with Walmart's purchase from BCK and not a direct acquisition from Saminvest as that letter also referred only to the proposal that was the subject of the approvals being considered by the court.[5] This appeal followed.

obligation to inform the Court, and any interested parties, that it no longer has a legal interest in the property.

[5] Samost's March 26, 2008 letter in response stated, in pertinent part, the following:

I am in receipt of your letter of March 25, 2008. For a number of reasons, I do not think it is necessary for you to contact the Court. As various representatives of Walmart can attest, given their presence at the hearings that were held before the Berlin Borough Planning Board with respect to the development application, the record is replete with statements and letters from me— as well as correspondence from Walmart itself—that Walmart did not have an agreement to acquire the property.

. . . .

If, as I have stated, and as Walmart has previously set forth in correspondence to the Berlin Borough Planning Board, Walmart did not have an agreement to acquire the property, but rather might do so in the future, then there is nothing different today than there was when this matter was before the Berlin Borough Planning Board.

A-4906-18T4

In our review of a denial of a motion for judgment under Rule 4:40-1, we apply the same standard of review as the trial court. Frugis v. Bracigliano, 177 N.J. 250, 269 (2003). The standard for deciding a motion for involuntary dismissal under Rule 4:37-2(b), applies to a motion for judgment at trial. R. 4:40-1. A motion for judgment shall be granted if, after presenting its proofs, plaintiff "has shown no right to relief." R. 4:37-2(b); see also R. 4:40-1. The motion must be denied "if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor." R. 4:37-2(b); see also R. 4:40-1.

Where the issue raised by the motion relates to a statute of limitation barring a claim, we review de novo the trial court's legal determination about when a cause of action accrued, applying the same standards as the trial court. Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 328 (2010); see also Lopez, 62 N.J. at 272. "[A]ccrual occurs when a plaintiff knows or, through the exercise of reasonable diligence, should know of the basis for a cause of action against an identifiable defendant." Palisades at Fort Lee Condo. Ass'n v. 100 Old Palisade, LLC, 230 N.J. 427, 447 (2017).

The court's determination of the date of accrual "is highly fact-sensitive, and will 'vary from case to case, and . . . from type of case to type of case.'"

12

Catena v. Raytheon Co., 447 N.J. Super. 43, 54 (App. Div. 2016) (alteration in original) (quoting Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 434 (1987)). For that reason, we are bound by the trial court's findings of fact "when supported by adequate, substantial and credible evidence." Rova Farms Resort, Inc. v. Inv'rs Ins. of Am., 65 N.J. 474, 484 (1974).

"[W]e do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice[.]" Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011) (second alteration in original) (quoting In re Trust Created by Agreement Dated Dec. 20, 1961, 194 N.J. 276, 284 (2008)). We give particular deference to the trial judge's factual findings when the evidence is largely testimonial and involves credibility determinations. See In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997); see also Lopez, 62 N.J at 275 (noting that the resolution of discovery issues may rest on witness credibility).

On appeal, Walmart argues that (1) Saminvest's claim expired before it was filed, (2) under our holding in Miller v. Bank of Am. Home Loan Servicing, L.P., 439 N.J. Super. 540, 550-51 (App. Div. 2015) (addressing the sufficiency of evidence needed to defeat summary judgment), Samost's testimony at trial

did not create a genuine issue of material fact, and (3) the discovery rule does not save Saminvest's claims. Specifically, Walmart argues that the March 25, 2008 letter Walmart sent to Saminvest informing it that Walmart no longer had "any legal interest in the property," which Samost acknowledged in his response the next day, established March 26, 2008 as the accrual date for Saminvest's cause of action. We disagree.

At the outset, we will not consider Walmart's contention challenging the denial of summary judgment by asserting there were genuine issues as to material facts because we affirmed that determination in our earlier opinion. There, we stated "we detect no error in the trial court's denial of Walmart's motion for summary judgment and [its] decision to proceed to trial." Berlin I, slip op. at 20. We will not revisit that final determination, especially because the trial court's and our earlier decisions were based upon the record evidence at the time of the motion and not upon testimony at the later trial. We are constrained to review the trial court's decision disposing of the summary judgment motion "based only on the case as it unfolded to the point of the motion, including evidential materials submitted on that motion." Lebron v. Sanchez, 407 N.J. Super. 204, 213 (App. Div. 2009) (citing Bilotti v. Accurate Forming Corp., 39 N.J. 184, 188 (1963)).

Turning to the discovery rule, we hew to our explanation of the rule as set forth in our prior opinion and our reliance on the Court's holding in Lopez and its progeny. See Berlin I, slip op. at 17-19; see also Palisades at Fort Lee Condo. Ass'n, 230 N.J at 443-47. We add the following observations.

"In case of fraud the period of limitation, in equity, begins to run only from the discovery of the fraud or the time when, by reasonable diligence, it could have been discovered." Lopez, 62 N.J. at 275 n.2. "The [discovery] rule thus prevents the defendant from benefiting from his own deceit," Catena, 447 N.J. Super. at 54, and it strikes a balance between "the need to protect injured persons unaware that they have a cause of action [and] the injustice of compelling a defendant to defend against a stale claim," Kendall v. Hoffman–La Roche, Inc., 209 N.J. 173, 193 (2012). "[S]omething different [is] needed in the case of fraud, where a defendant's deceptive conduct may prevent a plaintiff from even knowing that he or she has been defrauded. Otherwise, 'the law which was designed to prevent fraud' could become 'the means by which it is made successful and secure.'" Catena, 447 N.J. Super. at 54 (second alteration in original) (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 644 (2010)).

"Whether the discovery rule applies depends on 'whether the facts presented would alert a reasonable person, exercising ordinary diligence that he

or she was injured due to the fault of another.'" Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 134 (2017) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 246 (2001)). "The standard is basically an objective one—whether plaintiff 'knew or should have known' of sufficient facts to start the statute of limitations running." Ibid. (quoting Caravaggio, 166 N.J. at 246). "[L]egal and medical certainty are not required for a claim to accrue." Kendall, 209 N.J. at 193. In fraud cases, "[t]he date of discovery, therefore, is when the fraud was or reasonably should have been discovered." Catena, 447 N.J. Super. at 55.

The trial court here made specific findings of fact about the parties' actions and their intentions, and it explained in detail why the March 25, 2008 letter did not even refer to the Saminvest sale to Walmart. We conclude that those findings were well supported by sufficient evidence in the record in light of the trial court's credibility findings about Samost and Sitton, which we have no cause to disturb.

Applying those facts to the Lopez considerations, see Berlin I, slip op. at 18 (quoting Lopez, 62 N.J. at 275-76), compels our affirming the trial court's decision, substantially for the reasons stated by the trial court in its thorough oral decision as we too conclude that Saminvest's cause of action did not accrue until April 2, 2009. Suffice it to say, the March 25, 2008 letter did not make

16

Saminvest aware of facts indicating Sitton "<u>knew</u> [his statements about going forward with the transaction were] false, and <u>intended</u> [Saminvest] to rely on [their] falsity." <u>Catena</u>, 447 N.J. Super. at 55-56 (citing <u>Merck & Co.</u>, 559 U.S. at 649 (stating that it would "frustrate the very purpose of the discovery rule" if the limitations period commenced "regardless of whether a plaintiff had discovered any facts suggesting scienter.")).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4906-18T4