**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0222-22

LISA HOOD,

    Plaintiff-Appellant,

v.

MATT BLATT, INC.,
a/k/a MATT BLATT KIA,

    Defendant-Respondent.

_____

Submitted November 14, 2023 – Decided February 7, 2024

Before Judges Natali and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-3670-21.

Lisa Hood, appellant pro se.

Capehart & Scatchard, PA, attorneys for respondent (Laura D. Ruccolo, on the brief).

PER CURIAM

    Plaintiff Lisa Hood appeals from the trial court's August 1, 2022 order dismissing with prejudice her complaint against defendant Matt Blatt, Inc., also

known as Matt Blatt Kia, on statute of limitations grounds. Because we conclude plaintiff was entitled to the benefit of the discovery rule, we reverse the order on appeal and remand the case to the trial court.

We summarize the facts relevant to our disposition, as set forth in the complaint and the hearing testimony. In September 2010, plaintiff purchased a 2007 Yukon Denali from defendant, a car dealership in Egg Harbor Township. The vehicle had 78,000 miles on it and came with an engine and transmission warranty for 100,000 miles or five years; she also purchased an additional warranty, the details of which are unclear from the record.

Within two months of plaintiff's purchasing the vehicle, it had transmission issues. In July 2012, plaintiff paid an $800 deductible to defendant to replace the transmission, which was still under the warranty. At that time, the vehicle had over 95,000 miles on it. When she received the vehicle back, Donald Heritage, defendant's service writer, told her that a "new transmission" had been installed.

Plaintiff drove the vehicle without any issues until 2021, when it again experienced transmission problems. At that point, the vehicle had between 180,000 and 185,000 miles on it. Plaintiff brought the vehicle to two independent mechanics, both of whom inspected the vehicle and advised her that

the transmission was not new when it was installed in the vehicle. Plaintiff received an estimate of $6,700 to replace the transmission.

Plaintiff's complaint, filed on October 29, 2021, alleged violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2 (count one); negligent misrepresentation (count two); constructive—equitable fraud (count three); civil conspiracy to defraud (count four); breach of the implied covenant of good faith and fair dealing (count five); and intentional infliction of emotional distress (count six). She sought compensatory, treble and punitive damages and other unspecified equitable relief.

Defendant answered the complaint and subsequently filed a motion to dismiss it pursuant to Rule 4:6-2(e). On February 25, 2022, the court dismissed counts four and six[1] and reserved decision on the remaining counts pending a hearing pursuant to Lopez v. Swyer, 62 N.J. 267 (1973).

At the hearing, defendant called two witnesses, both of whom the court accepted as experts, presumably in vehicle repairs. Steven Espinal was an auto mechanic employed by defendant, although not when the repair to plaintiff's vehicle occurred in 2012. He testified as to the standard procedures taken by defendant's repair department when a customer brought in a vehicle with a

---

[1] Plaintiff did not appeal the dismissal of these counts.

A-0222-22

complaint. He testified that, given the passage of time, the company no longer had any records pertaining to the sale of the vehicle, the 2012 repair or any of the warranties because it purged documents every seven or eight years. However, during the hearing he was able to access defendant's system and obtain information about the vehicle's service.

As to the repairs on plaintiff's vehicle, Espinal explained that the terms of a warranty determined whether a new or remanufactured transmission would have been used, so without the records he could not confirm whether the replaced transmission was new or remanufactured. He testified he had seen transmissions that only lasted 5,000 or 10,000 miles, and some that were still working at 200,000 miles.

Espinal further testified that it was possible to determine whether a transmission was new or used by looking at it:

> There's usually say if it was to be a used transmission, you can usually see like a VIN identifier. It's usually like a VIN plate sometimes they'll do on a transmission.
>
> Sometimes a junkyard will put even they're called heat tabs, they're usually for engines, but I've seen them on transmissions as well.
>
> I'm trying to think of other things. Sometimes junkyards put like markings on it to like identify which engine or which customer it's going to, like a [P.O.],

like a purchase order number or something written on the transmission.

And like with what her witness was saying, like you could sometimes see like the mating where the transmission and the engine mate. You could see like a significant color difference. Like the aluminum tends to have oxidation on it and it will have like that white[-]like cloudy[-]like dust almost.

And sometimes you could differentiate the age of the transmission to the engine if it's ever been replaced. But past that it's really hard to say how long.

And sometimes also it's like a steel, it could be a steel block with an aluminum head, aluminum belt housing for the transmission, and you won't really be able to compare in that sense. But nowadays everything has an aluminum block, nowadays.

Plaintiff also offered the testimony of Frederick Barker, a friend of plaintiff, who was previously employed as a service writer and technician at a BMW dealership. Barker explained that in June 2022, he ran an electronic check on plaintiff's vehicle, which indicated an issue with the transmission. He also testified the transmission must have been replaced in 2012 because otherwise the vehicle would have been inoperable; and that a new transmission should last about ten years. He explained that a dealership could replace a transmission with either a new or used one; a new one would have likely cost her around

$3,400 and since she only paid an $800 deductible, it was his opinion that the transmission had been replaced with a used one in 2012.

Plaintiff testified about the 2012 repairs consistent with the allegations in her complaint. She stated she took the vehicle every 3,000 miles for routine maintenance, including inspections and oil changes, and did not encounter any issues with it until October 2021.[2] She further testified that other than a work order for the 2012 repair, she did not retain any documents from her purchase of the vehicle, the repair or the warranties.

After considering the testimony, the court made the following findings:

> I found [plaintiff's] testimony to be truthful. She basically testified that she purchased the vehicle in 2010 from Matt Blatt Kia. It was a used vehicle and had approximately 78,000 miles on it at the time that she purchased it in 2010. It was a 2007 GM vehicle.
>
> Approximately two years later in September 2012 when there were about 89,000 miles on it she had an issue with the transmission. She testified that she had also obtained a ten-year, 100,000 mile warranty on the vehicle in 2010 when she purchased it.
>
> She brought it in 2012. She was given a new or replacement transmission vehicle in 2012. She then drove the vehicle for another nine years approximately

---

[2] Plaintiff's complaint and appellate brief state the vehicle became inoperable in January 2021; however, she testified numerous times during the hearing it was October 2021. The discrepancy does not impact our analysis of the discovery rule.

A-0222-22

until October 2021, a little over nine years. She put around another 90,000 miles on the vehicle at that time and then she began to experience problems with the transmission.

She testified that she regularly serviced the vehicle every 3,000 miles and that she really had no issues with the vehicle until October 2021 when she said at that time she was advised that she did not have a, quote, new transmission placed in the vehicle back in 2012.

The court then noted neither plaintiff nor defendant had retained copies of any documentation of the sale, repair or warranties regarding the vehicle. However, it found "there must have been a change in the transmission, whether new or used, in 2012," because otherwise "she would not have been able to drive the vehicle for another nine years and another 90 to 100,000 miles."

The court then found the injury did not occur in 2012 because there was no "competent evidence" that there was an additional warranty from 2012, so no "claim that would have arisen in 2012."

Because she suffered the injury much later I don't see that at that time Matt Blatt, based on the existence of a 2010 warranty, is responsible for an injury that occurred in 2021.

I can't find that, right? Because everybody agrees that it's ten years or 100,000 miles. So, by the time that we get to 2021, we're clearly outside the ten[-]year warranty that started in September 2010.

The court then addressed the factors under Lopez:

The nature of the alleged injury is a transmission . . . ceased to work approximately nine years after it was worked on by [defendant].

So, that injury, again, I don't believe happened in 2012. I don't think there's been any expert testimony to indicate that something that was done wrong in 2012 caused an injury seven years later. All right. So, we have to look at when the injury was. The injury was not in 2012, it was in 2021.

The availability of witnesses and written evidence. Both parties agree that there's an issue with written evidence. It's just not available. Nobody has the documentation that indicates that the warranty is there.

Witnesses. I don't, you know, nobody has produced Mr. [Heritage]. We have from the defense an employee who started working there in 2014. So it would seem to me that perhaps the people who were around when [plaintiff] originally brought her car in 2010, 2012, might not be there any more. Which is reasonable because it has been about ten years.

The length of time that has elapsed since the alleged wrongdoing. Again, I'm going to go back to the 2010 warranty because I don't find any competent evidence of a 2012 warranty.

I do find that there [were] repairs done under the 2010 warranty. I can't find, based on what's been presented to me today, that there was any injury that arose from that. Again because [plaintiff] testified truthfully that she had no problems with the car and she was getting it regularly serviced until 2021.

Whether the delay has been to any extent deliberate or intentional. I don't find that it was deliberate or

intentional on any party. I don't find that any party has engaged in any improper conduct that would have concealed this you know from the other party. It's just you know from what I can see the nature of mechanical things that over time they may or may not break. But to the extent again that there was a 2012 warranty, I can't find that.

And whether the delay may have been said to unusually prejudice the defendant. Under these circumstances I do find that there is some unusual prejudice just because there you know the people who interacted with [plaintiff] are no longer there, it's outside the seven[-]year document retention policy.

. . . .

Again I can't find that the injury happened back in 2012. The injury happened now. But I don't find under the circumstances that there is sufficient evidence before me for me to determine that that injury was caused by the defendants, frankly. It just doesn't seem based on the expert testimony that it was something that they did improperly.

The court entered an order dismissing the remaining counts of plaintiff's complaint "because they were filed significantly beyond the six-year statute of limitations."

Where, as here, "the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment," Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, PC, 237 N.J. 91, 107 (2019) (citation reformatted), which we review de novo, employing

the same standard as the trial court. See Townsend v. Pierre, 221 N.J. 36, 59 (2015) (citing Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405 (2014)).

We do, however, apply a deferential standard in reviewing factual findings by a judge. Balducci v. Cige, 240 N.J. 574, 595 (2020). Deference is also given to a trial court's credibility findings "because it has 'a better perspective than a reviewing court in evaluating the veracity of a witness.'" C.R. v. M.T., 248 N.J. 428, 440 (2021) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

Plaintiff was required to bring her claims of Consumer Fraud Act violations, negligent misrepresentation, equitable fraud and breach of implied covenant of good faith and fair dealing within six years of when they accrued. N.J.S.A. 2A:14-1; Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016).

The goal of the discovery rule is to "avoid [the] harsh results that otherwise would flow from mechanical application of a statute of limitations." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 191 (2012) (alteration in original) (quoting Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001)). "Under the rule, a claim does not accrue until the plaintiff 'discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim.'" Catena, 447 N.J. Super. at 52 (quoting

<u>Lopez</u>, 62 N.J. at 272).  In applying the rule, the court must also consider "whether the delay may be said to have peculiarly or unusually prejudiced the defendant."  <u>Lopez</u>, 62 N.J. at 276.

Plaintiff raises the following arguments for our consideration:

> A.    The Trial Court Erred and Deprived Plaintiff of Due Process and Equal Protection under the Equitable Tolling Doctrine Given the Facts Presented Below.
>
> B.    The Trial Court Erred and Deprived Plaintiff of Due Process and Equal Protection by Allowing Defendant to Ignore Plaintiff's Discovery Demands.
>
> C.    The Trial Court Erred by Accepting Testimony from Defendant's Witness who was not Credible and Lacked Personal Knowledge.
>
> D.    The Trial Court's Dismissal Order is Detrimental to Public Safety and Policy Given Defendant's Breach of Implied Covenants of Good Faith and Unconscionable Conduct that Extends Beyond an Injury to Plaintiff.

While we disagree with plaintiff's assertions that this case presents issues of constitutional dimension, we do agree the trial court erred in denying her the benefit of the discovery rule.

Plaintiff's complaint alleges she purchased a used vehicle from defendant in 2010.  Two years later, the vehicle had transmission problems that were fixed by defendant under the warranty.  Upon paying a deductible, defendant made

11

repairs to the vehicle. Plaintiff claims defendant's employee told her the replacement transmission was "new," which she took to mean just that, a new part. She drove the vehicle without issue for ten years, until the transmission again failed. It was not until she brought the vehicle to two different mechanics that she learned the replacement transmission was not a new part, but a used or remanufactured one.[3]

Based on those facts, we agree with the trial court's determination the injury to plaintiff occurred when the transmission failed, whether that was in January or October 2021. However, she did not know a third party may have been responsible until after that event, when two different mechanics advised her the replacement transmission was not new when it was installed in the vehicle.

Although not squarely addressed by the trial court, we reject defendant's contention that the condition of the transmission could have been readily ascertained. Espinal's testimony, which the court found credible, was that a used transmission could be identified through a VIN plate, heat tab, or purchase order

---

[3] Although the court and the parties discussed the alleged warranties during the hearing, plaintiff's complaint does not contend defendant breached the terms of a warranty; rather, her claims sound in fraud based on the alleged misstatement about the replacement transmission.

on the transmission, or by examining its metal composition. Plaintiff testified she took the vehicle in to defendant for routine maintenance; she never had any issues with the vehicle and had no occasion to inspect it herself. Even if she had lifted the hood, the identifiers or characteristics of a used transmission would not be readily apparent to the untrained eye. Therefore, plaintiff did not know, nor should she have known, sufficient facts to commence the statute of limitations until she brought the vehicle to the other mechanics after the transmission failed in 2021.

We also agree with plaintiff that there was no evidence that defendant would be unduly prejudiced by application of the discovery rule. See ibid. Other than the work order for the repair, it appears neither party retained paper records of the sale or repair. However, it appears that electronic records were available, because Espinal was able to access some records during the hearing. There also was no representation by defendant that Heritage or other witnesses were not available.

At this juncture, we need not consider plaintiff's lack of proofs and issues with establishing causation. For purposes of the Lopez hearing, the question was not whether plaintiff had a meritorious case, or whether she was likely to prevail at trial. The only issue was whether she should have her day in court or

13

whether her complaint should be barred by the statute of limitations. We conclude that plaintiff is entitled to the benefit of the discovery rule. Accordingly, we reverse the order on appeal, reinstate counts one, two, three and five of the complaint, and remand this case to the trial court. Because the case has been reinstated, we decline to address plaintiff's arguments regarding discovery.

To the extent we have not expressly addressed any issues raised by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0222-22